THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLARENCE W. SMITH, a/k/a C. W. Smith, a/k/a John Davidson,
Defendant-Appellant.

Fourth District   No. 17345

Opinion filed April 15, 1982.—Rehearing denied April 27, 1982.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Following a jury trial in the circuit court of Champaign County, the defendant, Clarence W. Smith, was convicted of armed robbery and sentenced to 18 years' imprisonment. The defendant appeals his conviction and sentence. We affirm.

At trial, Sherry Walker testified that, in an attempt to sell two diamonds, she placed a classified advertisement in a newspaper. A man calling himself John Davidson responded to her ad and indicated his

interest in one of the diamonds. They arranged an evening meeting at Ms. Walker's home.

After entering Ms. Walker's house, Davidson flourished a sawed-off shotgun and demanded that Ms. Walker give him the diamond and her purse. She complied. Davidson forbade Ms. Walker to look at him. After pulling the telephone out of the wall, Davidson departed.

Denise Sayre testified that she was an acquaintance of the defendant. The defendant asked her to sell a diamond for him, because it would "look better for a white girl to sell it than a black guy." Ms. Sayre's attempts to sell the diamond at several jewelry stores were unsuccessful.

■■ On appeal, the defendant claims the trial court erred in giving, over his objection, the following instruction:

> "If you find that the defendant had exclusive possession of recently stolen property and there is no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by armed robbery.
>
> You are never required to draw this inference. It is for the jury to determine whether the inference should be drawn from all the facts of the case before it."

Defendant argues that, under *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, his possession of recently stolen property was insufficient by itself to prove his guilt beyond a reasonable doubt of armed robbery. In *Housby*, the Illinois Supreme Court ruled upon an instruction given at a burglary trial. This instruction permitted the jury to infer that the defendant had obtained possession of recently stolen property by burglary if they found that the defendant had exclusive possession of recently stolen property and there was no reasonable explanation for his possession. The *Housby* court said that the inference used in the jury instruction did not infringe upon Housby's due process rights if: (1) there was a rational connection between his recent ₊ ssession of property stolen in the burglary and his participation in the burglary; (2) his guilt of burglary flowed more likely than not from his recent, unexplained, and exclusive possession of burglary proceeds; and (3) ther was evidence ₊ rroborating the defendant's guilt.

Our reading of the record in the instant case leads us to conclude that the instruction met *Housby's* requirements. The defendant claims that there was no corroborating evidence of his guilt. We disagree. The defendant fit Walker's general description of the man who robbed her. Walker testified that the robber was a black male, with a medium brown complexion, who stood approximately 6 feet tall and weighed 175 to 180 pounds. The defendant is 6 feet tall and weighs 180 pounds. He had a complexion and skin color similar to that described by Walker. Walker

was unable to positively identify the defendant. However, after viewing a lineup, Walker asked to see the defendant a second time.

According to the defendant, a reasonable possibility existed that he had bought the diamond. Under this hypothesis an inference that the defendant obtained the jewel by armed robbery cannot be sustained by his mere possession of the stone. At trial, the defendant's story that he bought the diamond from a man in a pool hall was shown to contain several inconsistencies and was impeached in significant areas. The defendant first disclaimed any knowledge of the diamond to the police. He later denied giving this statement. On a different date, the defendant testified that he bought the diamond for $28 from a man in a pool hall, but the defendant could not describe this man. According to the defendant, he had the diamond appraised by a middle-aged man at Frank's Jewelers. This man allegedly gave the defendant an estimate free of charge. This employee supposedly stated that the diamond was worth $500-$1400, but did not provide the defendant with an appraisal slip. At trial, an employee of Frank's Jewelers testified that they did not have a middle-aged man working for them at the time that defendant allegedly received the appraisal. Also, Frank's Jewelers does appraisals only for jewelry they sell themselves. They do not appraise loose stones brought in by people off of the street. Appraisals from Frank's give a specific dollar amount as to the value of the jewelry and not a range of values. Frank's generally charges a fee for their appraisal and provides an appraisal certificate. The defendant also testified that he had the diamond appraised by Mr. Reed at Reed's Jewelers. The defendant said that he was not charged a fee or given an appraisal slip at this establishment. Sherry Walker had previously taken the stone to Reed's. Reed gave Walker an appraisal slip setting the value of the diamond at $575. Reed testified that Walker's diamond was somewhat unusual because it had nicks and abrasions around its edges and because it had certain internal flaws. When, at the prosecution's request, Reed examined the diamond possessed by the defendant, he stated that it was the same stone he had appraised for Walker. It would therefore seem likely that, if Reed had examined the diamond for the defendant, he would have recognized its similarities to Walker's stone at that time. Also, in accordance with Reed's business practices, Reed would have probably given the defendant a fixed value and an appraisal slip instead of a range of values and no appraisal slip.

We find that the requirements of *Housby* have been satisfied. There was a rational connection between the defendant's recent possession of Walker's diamond and his participation in the armed robbery. The defendant's guilt of armed robbery flowed more likely than not from his recent, unexplained, and exclusive possession of the diamond. There was

sufficient evidence, as set out above, to corroborate the defendant's guilt. Therefore, the giving of the instruction in question here was proper and violated none of the defendant's constitutional rights. See also *People v. Killings* (1982), 103 Ill. App. 3d 1074.

The defendant next claims that he was improperly sentenced and asks that this cause be remanded for a new sentencing hearing.

Section 5—5—3.2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)) lists the differing factors in aggravation that may be considered by the trial court in favor of imposing a term of imprisonment or as a reason to impose a more severe sentence. The trial judge indicated that he relied upon the following factor when determining the defendant's sentence: "[T]he defendant's conduct caused or threatened serious harm." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1).) The trial court stated:

> "The crime of armed robbery is a crime which threatens the most serious kind of physical harm to another as it did in this case. The threat to the victim, Sherry Walker, in this case was that she complied with the demands of the defendant concerning the diamond and other demands made during the process of his obtaining the diamond for the implicit threat by the presence of the gun was pointed at her was that she would be shot and either killed or seriously injured as a result of such shooting as her assailant might see fit, that is, wherever he would choose to shoot her upon her failure to comply."

In support of his argument, the defendant relies upon our decision in *People v. Allen* (1981), 97 Ill. App. 3d 38, 422 N.E.2d 254, where we narrowly construed the use of the aggravating factor of risk of harm. We find *Allen* to be distinguishable upon its facts from the situation here. Allen's conduct could have conceivably harmed him. We said that almost all burglaries inherently impose a threat of serious harm to the burglar and also to the police as they attempt to capture the burglar. Thus, the risk of harm in *Allen* was no greater than that inherent in almost all burglaries. We took pains to point out that the situation in *Allen* was not like one in which the burglar engages in combat with the police, enters an occupied dwelling or other building, or has a confrontation with persons while in the building.

■■ The use of this aggravating factor in sentencing must be examined in light of the particular circumstances of each case. In the array of available weapons, a sawed-off shotgun is among the most dangerous and threatening. The defendant here concealed this vicious weapon and, through duplicity, brought the weapon into Ms. Walker's home. He used the weapon to terrorize her. This combination of weapon and setting makes the instant crime one where the defendant's conduct clearly threatened

serious harm greater than the harm inherent in all armed robberies. Thus, the trial court properly took this threat into account when determining the defendant's sentence.

Accordingly, the judgment and sentence of the trial court are affirmed.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.