THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARIO S. GRAY, Defendant-Appellant.

Third District   No. 3—89—0811

Opinion filed April 25, 1991.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

The defendant, Mario S. Gray, was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2) and sentenced to an eight-year term of imprisonment. He appeals the denial of his motion to suppress and his sentence.

The record shows that prior to trial, the defendant moved to suppress his statements to the police. He alleged that he had told Joliet police officers that he did not want to be questioned, but that Bolingbrook police officers had violated his rights by later questioning him.

The court conducted the hearing on the motion simultaneously with the bench trial. Officer Robert Briney of the Joliet police department testified that on April 18, 1989, he received a radio report that a Joliet officer was stopping a white van reportedly involved in a Bolingbrook armed robbery. When Briney approached the scene, he spotted the defendant, who matched a description of one of the robbery suspects. Briney arrested him and took him to the police station.

At the station, Briney obtained general booking information from the defendant. When he learned that the defendant was a minor, he contacted the defendant's mother and told her that her son was in custody. The defendant also spoke with her.

Officer Joseph Seme of the Joliet police department testified that after he gave the defendant *Miranda* warnings, he asked about the incident. The defendant replied, "There's nothing to talk about." Seme then asked if the defendant drove the van, and the defendant said, "I don't know nothing about a van." Seme concluded that the defendant did not want to talk and ended the questioning. However, he could not recall whether he told the officers who later picked up the defendant that the defendant did not want to answer questions.

Briney testified that within a half-hour of the defendant's refusal to answer questions, Bolingbrook police officers Robert Steinke and Ernest Gorering arrived to take the defendant back to the Bolingbrook police station. Officer Gorering testified that they arrived at the Joliet station about 9:20 p.m. During the ride back to Bolingbrook, neither officer discussed the incident with the defendant. They did, however, have a friendly conversation with him. When they arrived at the Bolingbrook station about 10 p.m., Gorering gave the defendant *Miranda* warnings. The defendant then made a statement confessing to the offense, which he repeated on tape.

The trial court denied the suppression motion, finding that although the defendant had asserted his right to remain silent at the Joliet station, the Bolingbrook police did not violate his rights by reinitiating questioning.

The court then heard further evidence about the offense. For the purposes of this appeal, it is not necessary to recount the facts in detail. Of note was the testimony of the two victims, who stated that they had arranged to meet with the defendant and two other youths in order to sell them some stereo speakers. When the parties met, the defendant entered the victims' van and brandished a sawed-off shotgun. After a brief struggle, the victims fled the scene. As they ran, they saw their van being driven away.

The defendant's statement was also entered into evidence. In it, he admitted using a shotgun during the offense. He further admitted that after his accomplice took the shotgun from him, he urged the accomplice to shoot the victim. The parties also stipulated that a fingerprint on the weapon matched the defendant's prints.

After the court found the defendant guilty, the cause proceeded to sentencing. The court stated that because of the defendant's age and his lack of a prior criminal record, it would normally have considered imposing the minimum sentence of six years. However, since the defendant used a weapon that was more dangerous than a handgun, the court imposed an eight-year term.

On appeal, the defendant first argues that the court erred in denying his motion to suppress. He contends that the police violated his right to cut off questioning when they questioned him at the Bolingbrook station.

■■ ■ When a defendant asserts his right to cut off questioning, the interrogation must cease. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) However, the *Miranda* case did not establish a *per se* proscription on the renewal of questioning by the police after the defendant's initial request to remain silent.

Statements made by a suspect who earlier expressed a desire to remain silent are admissible if the police "scrupulously honored" the defendant's right to cut off questioning. *Michigan v. Mosley* (1975), 423 U.S. 96, 104, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.

The voluntariness of a later statement is determined by examining the totality of the circumstances. (*People v. Reyes* (1989), 181 Ill. App. 3d 246, 536 N.E.2d 990.) The relevant circumstances include the following: whether there was a significant lapse of time between interrogations; whether new *Miranda* warnings preceded the resumed questioning; whether different officers conducted the second interrogation; and whether there was an explanation for the defendant's reconsideration of his decision to remain silent. (*Reyes*, 181 Ill. App. 3d at 255, 536 N.E.2d at 996; *People v. Savory* (1980), 82 Ill. App. 3d 767, 403 N.E.2d 118.) Lastly, the trial court's decision on voluntariness will not be reversed unless it was against the manifest weight of the evidence. *People v. Young* (1983), 115 Ill. App. 3d 455, 450 N.E.2d 947.

■ We find that the record supports the trial court's decision. The period of approximately one hour between interrogations was a significant lapse of time. (*Reyes*, 181 Ill. App. 3d at 256, 536 N.E.2d at 996.) Additionally, the second interrogation was preceded by new *Miranda* warnings and was conducted by different officers. The defendant also had engaged the Bolingbrook officer in a friendly discussion about unrelated matters during the ride to Bolingbrook. Based on the foregoing, we find that the trial court's denial of the motion was not against the manifest weight of the evidence. See *Young*, 115 Ill. App. 3d at 463-64, 450 N.E.2d at 953-54.

The defendant further argues that the trial court erred in considering as an aggravating factor that he used a sawed-off shotgun during the robbery. He contends that the court should not have considered the threat of serious harm posed by the weapon, because such a factor is implicit in the offense of armed robbery. See, *e.g., People v. Rhodes* (1986), 141 Ill. App. 3d 362, 490 N.E.2d 169.

■ As a general rule, a sentencing court should not consider as an aggravating factor any factor that is inherent in the offense. (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) However, the *Conover* rule is not meant to be applied rigidly, and sound public policy dictates that a defendant's sentence be varied in accordance with the circumstances of the offense. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) Consequently, it has been held that the degree of threatened harm in an armed robbery is a proper sentencing consideration. *People v. Griffin* (1983), 117 Ill. App. 3d 177, 453

N.E.2d 55; *People v. Carmack* (1982), 103 Ill. App. 3d 1027, 432 N.E.2d 282.

■ Here, the court stated that it considered the defendant's use of a shotgun as an aggravating factor because it is a more dangerous weapon than a handgun. A sawed-off shotgun has been considered among the most dangerous and threatening weapons, the use of which threatens serious harm greater than is inherent in all armed robberies. (*People v. Smith* (1982), 105 Ill. App. 3d 639, 433 N.E.2d 1169.) Since we agree with the case law which holds that a court may consider the degree of threatened harm in an armed robbery, we find no error.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

McCUSKEY and SLATER, JJ., concur.