THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STERLING C. FLANERY, Defendant-Appellant.

Third District    No. 3—91—0448

Opinion filed June 5, 1992.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Sterling Flanery, was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2) and sentenced to a term of 12 years in prison. The defendant appeals. We affirm in part, vacate in part and remand.

At trial, Pamela Mason testified that on October 22, 1990, she was working at a Clark Gas Station in Streator, Illinois. At approximately 9:30 p.m. she noticed a man approaching the station with his T-shirt pulled-up over his nose and mouth. The man was wearing a dark jacket, blue jeans, dark tennis shoes and a blue and yellow hat. The hat had some words on it including the words "Instant Asshole." Mason also noted the man had facial hair.

The man entered the station and approached Mason. He told her to give him money. He then requested money a second time and pulled a gun from his left coat pocket. He placed the gun against her stomach. She proceeded to open the cash register and give him the paper money. The man placed the gun on the counter and took the money, placing it in his pocket. He picked up the gun and left the station. After he left, Mason telephoned the police.

Mason testified that while the robbery was taking place she recognized the man as Sterling Flanery, the defendant. She stated she had seen the defendant previously three or four times at the station. She had also seen him five or six times at the Monroe Tap located a few blocks from the station. Mason testified she did not smell alcohol on the defendant's breath. She told the police the man who robbed her was between 5 feet 5 inches and 5 feet 7 inches tall. Subsequently, Mason picked the defendant's photograph out of a group of eight photographs.

Streator police officer John Krasnicen testified that at about 8 p.m. on October 22, 1990, he saw the defendant standing near the Monroe Tap. Krasnicen described the defendant as wearing blue

jeans, a blue windbreaker and a blue and yellow baseball cap, with some writing or "garbage" on it which he could not make out because of the distance. Krasnicen testified that he subsequently went to the Clark station after the robbery and was told by Pamela Mason that she thought the robber was Sterling Flanery.

On the evening of October 22, 1990, Robert Scarbeary and James Christensen were working at the Flink Company in Streator. Flink manufactures snow-removal equipment. The Flink property lies on both sides of Park Street, with a building on the west side of the street and an open lot on the east side of the street. The lot was used for storing snow-removal equipment. That evening, the two men were moving equipment outside when they noticed a man walking along Park Street. The man was stumbling and staggering down the sidewalk. The man was wearing dark clothing and a baseball cap.

From the west side of the street, Scarbeary and Christensen observed the man enter the lot and walk among the snow-removal equipment. The man walked around the lot for up to 15 minutes. He appeared to fall among the equipment. Christensen went inside to notify a supervisor, Elmer Zelenak. Scarbeary watched the man leave the lot and continue on down to Monroe Street. Scarbeary testified that Elmer Zelenak came outside after being notified by Christensen. Scarbeary testified he mentioned to Zelenak that the person looked like Sterling Flanery. Scarbeary testified that Zelenak agreed with him. Zelenak subsequently testified he could not recall Scarbeary saying the man looked like Sterling Flanery.

Scarbeary testified they saw the man about 10 p.m. In an earlier statement Scarbeary indicated the incident took place at 10:30 p.m. or 10:45 p.m. At trial, Scarbeary and Christensen identified the defendant as the man they saw that night. They had also identified the defendant in an eight-photo lineup.

Richard Huffines testified he was working at the Monroe Tap on the night of October 22, 1990. The defendant was already at the bar when Huffines arrived at work. According to Huffines, the defendant left the bar around 7:30 p.m. and returned around 8 p.m. He left again around 9 p.m. and returned at about 10 p.m. The defendant left a third time around 10:30 p.m. Approximately 5 or 10 minutes after the defendant returned a third time, the police entered the bar asking for the defendant. The defendant was arrested at that time.

Mary Jo Lucero testified that she and her niece went to the Monroe Tap around 6 p.m. or 6:30 p.m. on October 22, 1990. They saw the defendant seated at the bar and joined him. Lucero noticed a hat on a beer cooler behind the bar. On the hat was the phrase, "Instant

Asshole, Just Add Alcohol." She inquired of the defendant who the hat belonged to and he responded he did not think it belonged to anyone. Lucero and her niece left the Monroe Tap around 8 p.m. or 8:30 p.m. and returned between 10 p.m. and 11 p.m. The defendant was still at the Monroe Tap when they returned.

Douglas Reynolds testified he worked for the Flink Company. Late in the morning on October 23, 1990, Reynolds was moving equipment in the Flink lot. Among the snowplows, he noticed a blue and yellow hat with the phrase "Instant Asshole" on it. He picked up the hat and found some money. He informed his foreman, Tim Tibbles, and they returned to the lot, where they found a .22 automatic behind a plow, a few feet from where the hat and money were found.

Clell Ivy testified he sold a .22 automatic to the defendant in August of 1990. The sale took place at the Monroe Tap and the parties did not exchange receipts.

The defendant testified that on October 22, 1990, he went to the Monroe Tap around 4:15 p.m. or 4:30 p.m. He left around 7 p.m. or 7:30 p.m. and walked to the Vermillion Club. He returned around 8 p.m.; however, he again left the Monroe Tap around 9 p.m., once again walking to the Vermillion Club. He returned to the Monroe Tap between 10 p.m. and 10:30 p.m. The defendant estimated he was drinking at the rate of three or four beers an hour starting at 4:30 p.m.

The defendant denied robbing the Clark station. He denied going near the Flink Company's property that night and denied wearing a hat that night. The defendant also denied buying a gun from Ivy. The defendant testified he was 5 feet 11 inches tall.

The jury found the defendant guilty of armed robbery and he was sentenced to 12 years in prison.

On appeal, the defendant contends the evidence was insufficient to prove him guilty beyond a reasonable doubt.

A conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) The relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

In the instant case, there was no physical evidence, such as fingerprints, linking the defendant to the armed robbery. Nor were there any incriminating statements made by the defendant. The defendant

was linked to the crime by the identification testimony of the witnesses.

The prosecution has the burden of proving beyond a reasonable doubt the identity of the person who committed the crime. (Ill. Rev. Stat. 1989, ch. 38, par. 3—1; *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.) A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.

The defendant argues that the testimony of the witnesses was vague, doubtful and uncertain. For example, he points to the fact that Pamela Mason indicated the armed robber was 5 feet 5 inches to 5 feet 7 inches tall, while in fact the defendant is 5 feet 11 inches tall. Mason did not smell alcohol on the person's breath while the defendant had been drinking since 4:30 in the afternoon. In talking to the police about who robbed her, Mason used terms like "almost positive" and "thought." The defendant also argues the identification of the defendant by Mason, Scarbeary and Christensen was unduly influenced by the suggestive photo lineup. The defendant argues that his photograph was the only one which fit the description given by Mason.

■ Viewing the evidence in the light most favorable to the prosecution, we find the testimony established the identity of the defendant as the armed robber beyond a reasonable doubt.

Mason testified she recognized the defendant during the course of the armed robbery. She told police almost immediately after the robbery. She had seen the defendant on 8 to 10 occasions prior to the robbery. In general, the clothing worn by the defendant that night fit the description given by Mason, Scarbeary and Christensen. Scarbeary had known the defendant for a number of years. He and Christensen picked the defendant's photograph out of the lineup, and they both testified at the trial that it was the defendant they saw enter the Flink lot the night of the robbery.

The hat with the phrase "Instant Asshole" was seen by a witness in the Monroe Tap, a couple of hours before the robbery. In fact, there was a conversation with the defendant concerning the ownership of the hat. Mason testified the robber was wearing a hat with the phrase "Instant Asshole" on it. The day after the robbery, a hat with the same phrase on it, a gun and money were found among the snow-removal equipment stored in the Flink lot. The defendant was seen entering this lot sometime after 9:30 p.m. on October 22, 1990.

In addition, Richard Huffines, who was working at the Monroe Tap on October 22, 1990, testified the defendant left the tavern around 9 p.m. and returned around 10 p.m.

In sum, we do not find the identification testimony to be vague and uncertain. The discrepancies raised by the defendant, such as the height of the robber, were not sufficient to negate the positive identification. The positive identification of three witnesses combined with the circumstantial evidence was sufficient to support the conviction.

Although we affirm the finding of guilt, we find the sentence must be vacated and the cause remanded for a new sentencing hearing. On appeal, the defendant argues the trial court relied on an improper aggravating factor and, alternately, imposed an excessive sentence in light of the facts.

After finding that none of the statutory mitigating factors applied, the court stated, "However, if we turn to the factors in aggravation, certainly the defendant's conduct caused or threatened serious harm. This was indeed, an armed robbery. The jury has found a gun was used." The court stated a prison sentence was necessary to deter others. The court also briefly mentioned the defendant had a history of criminal activity, although the court had earlier noted most offenses involved traffic offenses and misdemeanors. (His only felony conviction at the time was a Class 4 felony; driving while his license was revoked.) The court then reviewed the identification evidence in light of the defendant's continued denial of involvement.

■ As a general rule, a sentencing court should not consider as an aggravating factor any factor that is inherent in the offense. (*People v. Gray* (1991), 212 Ill. App. 3d 613, 571 N.E.2d 489.) In the instant case, the evidence presented showed nothing more than the defendant committed a robbery using a dangerous weapon; an element present in every armed robbery. (See Ill. Rev. Stat. 1989, ch. 38, par. 18—2.) Given the discussion of aggravating factors was very brief, we cannot determine how much weight the improper aggravating factor was accorded. Nor can we find, as the State argues, that the statement was merely made in passing. The trial court discussed this factor first in discussing the factors in aggravation.

In addition, even the trial court noted as unusual the relatively minor previous criminal record. The only other factor mentioned was the need to deter others. Given this record it is difficult to determine on what basis, other than the threat of serious harm, the trial court premised the decision to double the statutory minimum of six years. In sum, we find the trial court improperly relied upon the threat of serious harm in sentencing the defendant to 12 years. Therefore the

defendant's sentence must be vacated and the cause remanded for a new sentencing hearing.

Accordingly, the judgment of the circuit court of La Salle County finding the defendant guilty of armed robbery is affirmed; however, the sentence of 12 years in prison is vacated and the cause remanded for a new sentencing hearing.

Affirmed in part; vacated in part and remanded.

HAASE and McCUSKEY, JJ., concur.