No. 2--06--1225      Filed: 5-29-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re ESTATE OF ELVIGE STAEHLE | ) | Appeal from the Circuit Court |
| YUCIS, Deceased | ) | of Du Page County. |
| | ) | |
| | ) | No. 03--P--770 |
| (Craig J. Cobine, as Executor of the Estate | ) | |
| of Elvige Staehle Yucis, Deceased, Petitioner- | ) | Honorable |
| Appellee, v. Cyrus Mead IV, Respondent | ) | Kenneth L. Popejoy, |
| (Madeleine M. Ward, Appellant)). | ) | Judge, Presiding. |

JUSTICE GROMETER delivered the opinion of the court:

Madeleine M. Ward is a daughter and legatee of Elvige Staehle Yucis, who died on April 21, 2003. A Du Page County court convicted Ward of theft from Yucis and ordered Ward to pay restitution of $320,000 to Yucis's estate. In the probate case, Craig J. Cobine, the executor of the estate, brought a citation proceeding against Ward's former fiancé, Cyrus Mead IV. Cobine alleged that Mead had control of property of Ward's and that Ward was indebted to the estate under the restitution judgment. The probate court ordered Mead to give Ward's personal property to the sheriff for sale and allowed Mead to go forward with the sale of real estate in which Ward may have a contractual interest, but ordered the escrow of proceeds of both sales. Ward appeals from that order, challenging both the jurisdiction of the probate court to enter the order and its authority to do so under section 16--1 of the Probate Act of 1975 (Act) (755 ILCS 5/16--1 (West 2006)).

Initially, we observe that this court has reversed Ward's criminal conviction, so a restitution judgment no longer exists. People v. Ward, No. 2--06--0400 (2008) (unpublished order under

Supreme Court Rule 23). Nevertheless, whether the matter is moot depends on the statutory basis for the probate court's order. We cannot determine whether the court entered the order under section 2--1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2--1402 (West 2006)) or under section 16--1 of the Act. However, in either case, although the probate court did have jurisdiction, the order was improper. Thus, as we too have jurisdiction in either case, we vacate the order and remand the cause so that the probate court can conduct further proceedings as appropriate. If the original proceeding was under section 2--1402, our reversal of Ward's conviction bars further proceedings. But, if the proceeding was under section 16--1, Cobine may amend his pleadings and go forward if he is able.

Our disposition proceeds as follows. First, we recite the relevant facts. Second, we explain why the probate court erred in entering its order under either section. Third, we justify our jurisdiction to vacate the order under either section. Fourth, we justify the probate court's jurisdiction so that we may remand the cause. Finally, we reiterate our directions on remand.

We now summarize those facts necessary to our resolution of the matter. On August 6, 2003, Cobine, Yucis's son-in-law, petitioned the probate court to name him executor of Yucis's estate. The petition stated that Yucis had no real property and only $500 in personal property. The court named Cobine independent executor on August 11, 2003. In later proceedings challenging his executorship, Cobine told the court that the estate had an asset in the form of claims against Ward.

On March 21, 2005, the court entered a form order stating that it had continued the matter until April 18, 2005, for status. It also stated that "[illegible] file is closed subject to annual reports." On April 18, 2005, it entered an order placing the case on inactive status. The court continued the matter until April 4, 2006.

On July 5, 2006, Cobine appeared before the court, seeking permission to issue a citation to discover assets against Mead. The court granted permission and set the citation examination for July 12, 2006, at (apparently) the offices of Cobine's law firm. The record does not contain a transcript of the hearing at which the court allowed the citation. The record does contain a photocopy of a citation notice using the form for a section 2--1402 proceeding. The notice references a judgment of $320,000 entered on March 10, 2006, in felony case No. 02--CF--1242 (the case against Ward), but the notice bears the caption of the probate case. The record does not show that the estate served the citation notice on Ward.

On July 17, 2006, the estate filed a "Motion to Recover Assets" against Mead. It asserted that the criminal court had entered a restitution judgment of $320,000 against Ward, that Mead had been Ward's fiancé, and that he had made large gifts to her, including a new BMW (which Mead had sold, retaining the proceeds) and an engagement ring with a value of $27,000. Further, Mead had control of some of Ward's furniture and clothing, as Ward was in prison as a result of her conviction. Finally, Ward and Mead had a written agreement concerning a house at 1112 Elizabeth Avenue, Naperville. Mead had bought and had title to the property, but the agreement stated that, upon his death or the dissolution of his relationship with Ward, the property was to go to Ward. Cobine asserted that Ward was entitled to the proceeds of the property's sale--Mead had a contract pending to sell it--and that the estate was thus entitled to the proceeds in partial satisfaction of the restitution judgment.

A copy of the restitution order was an exhibit to the motion. That order, in full, states that "Defendant is ordered to pay restitution in the amount of $320,000.00 to the estate of Elvige Yucis and a judgment in that amount is hereby entered."

Ward filed objections to the motion, arguing that the citation had been one under section 16--1 of the Act, not section 2--1402 of the Code, and that, under section 16--1, a separate petition to recover assets is required. She also (or perhaps alternatively) argued that she was entitled to claim exemptions, including the homestead exemption. The court allowed Ward to file a response to the motion and ruled that Ward's objections would be considered with the motion.

In her response, Ward argued that the citation notice issued was one under section 16--1 of the Act and that, under that section, the court had proper authority to recover only property of the estate. She further asserted that the property Cobine sought to have turned over was Ward's--or, on Mead's arguments, Mead's--but could not be property of the estate. In support of the assertion that the citation proceeding was one under section 16--1, she attached a copy of a Du Page County form document apparently issued to Mead and bearing the heading "Citation to Discover Assets (To Be Used in Decedent's Estates, Disabled Estates, Minor's Estates)." This citation summoned Mead to appear before the court on August 10, 2006.

On October 31, 2006, the court heard the estate's motion. During this proceeding, Ward's attorney seemed to speak as if he understood the proceeding to be one under section 2--1402. For instance, when discussing how any personal property should be sold, he commented, "Well, I believe that Section 1402 requires that if it's not money it must be turned over to the Sheriff for sale." He objected to the sale of the real property on the basis that the sale would preclude Ward from asserting her rights under the agreement and retaking possession of the property. The court implied that Ward's chances of retaking possession were nonexistent, but said that if Ward "has some other rights that she thinks *** stop a sale of the home then she can pursue [them in] a separate action with Mr. Mead if she wants." It ordered Ward's personal property in Mead's possession to be turned over for

sheriff's sale, the proceeds to be escrowed. It also ordered the sale of the real property to go forward if possible, with the proceeds to remain in escrow with the title company. It overruled Ward's objection to the nature of the proceeding but continued her objection as to her claim of a right to exemptions. Ward filed a notice of appeal on November 30, 2006.

On appeal, Ward argues first that the probate court lacked jurisdiction to enter the October 31, 2006, order because it had closed the case on March 21, 2005. She also argues that collection of money judgments is supposed to be governed by section 2--1402 of the Code, so that the procedure followed in the probate court was wrong. Finally, she argues that the criminal court should decide the timing of restitution payments.

For reasons we discuss below, whether we have jurisdiction to consider this matter is a nontrivial question. When we do a jurisdictional analysis, we usually know the nature of the proceeding. We lack that advantage here. The common-law record is remarkably unhelpful regarding which provision governed. Further, although both parties at oral argument asserted that the proceedings had been under section 16--1, the transcript of the October 31, 2006, hearing points more toward the proceedings having been under section 2--1402. The court may have made the point clearer at a hearing date before October 31, 2006, but the only transcript is that of the hearing on October 31, 2006. Thus, it would initially seem that we should take our direction from the rule in Foutch v. O'Bryant, 99 Ill. 2d 389 (1984). That case holds that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." Foutch, 99 Ill. 2d at 391-92. Further, "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the

appellant." Foutch, 99 Ill. 2d at 392. Here, as we will next show, we cannot presume that the court acted in conformity with the law; neither section 2--1402 nor section 16--1 was a proper basis for the order under the facts alleged by the estate.

Our starting point is the recognition that the probate court would have committed a clear error of law by entering the order under section 2--1402. We believe it is common sense that supplementary proceedings on a judgment are not proper unless that judgment is enforceable. Supreme Court Rule 277(a) confirms that commonsense proposition: "A supplementary proceeding authorized by section 2--1402 of the Code *** may be commenced at any time with respect to a judgment which is subject to enforcement." (Emphasis added.) 134 Ill. 2d R. 277(a). A First District panel, in Marble Emporium, Inc. v. Vuksanovic, 339 Ill. App. 3d 84, 88-91 (2003), also agreed that the enforceability of a judgment is necessary for section 2--1402 proceedings to be proper. Action to enforce a criminal restitution order is proper only when the restitution payments are delinquent. The order Cobine attached did not set a time for payment, thus making it impossible to establish a delinquency. Therefore, the restitution order Cobine sought to enforce was not enforceable.

When a criminal court enters a restitution order, it must, taking into consideration the defendant's financial resources, set a time for the payment of the restitution--usually five years or fewer. 730 ILCS 5/5--5--6(f) (West 2004). If the court does not specify a particular time, the restitution order is fatally incomplete. People v. Hamilton, 198 Ill. App. 3d 108, 115 (1990); People v. White, 146 Ill. App. 3d 998, 1004 (1986). The time for payment set by the criminal court determines when the restitution order becomes enforceable by the victim. Section 5--5--6(m)(3) of the Unified Code of Corrections provides:

"(m) A restitution order under this Section is a judgment lien in favor of the victim that:

* * *

(3) May be enforced to satisfy <u>any payment that is delinquent under the restitution order</u> by the person in whose favor the order is issued or the person's assignee[.]" (Emphasis added.) 730 ILCS 5/5--5--6(m)(3) (West 2004).

Here, if the criminal court set a time for Ward to pay the restitution, that time was not part of the order Cobine included in his pleadings. Without a fixed time to pay, no delinquency can exist, and the victim cannot enforce the judgment. Cobine thus failed to allege the conditions necessary for him to enforce the order on the estate's behalf; if the court decided this matter under section 2--1402, the court's grant of what amounted to judgment on the pleadings was improper because of the lack of a document showing a fixed time to pay.

Cobine reads <u>Indesco Products, Inc. v. Novak</u>, 316 Ill. App. 3d 53 (2000), too broadly when he cites it for the proposition that a restitution order is <u>per se</u> enforceable by the victim. The payments on the restitution order at issue in <u>Indesco</u> were delinquent. <u>Indesco</u>, 316 Ill. App. 3d at 54. <u>Indesco</u> is thus distinguishable.

The probate court also would have committed a clear error of law by entering the order under section 16--1. Section 16--1 is a means by which an estate can recover property that belonged to the decedent. See 755 ILCS 5/16--1(a)(1), (d) (West 2006) (the section is applicable when it is alleged that a person has "concealed, converted or embezzled or [has] in his possession or control any personal property, books of account, papers or evidences of debt or title to lands which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his

representative"). Case law has always been clear that section 16--1 is not a general collection tool for the estate--the indebtedness of a person to the estate is a not a basis for use of section 16--1, as a debt to an estate does not make the debtor's property the estate's. Sullivan v. Arcola State Bank, 314 Ill. 40, 44 (1924); In re Estate of Pinckard, 94 Ill. App. 3d 34, 47 (1980).[1] Here, the estate alleged merely a judgment debt of Ward to the estate and thus did not state a basis for recovery of property under section 16--1. We note that, because the estate sought property that was assertedly a gift from Mead to Ward, it becomes particularly difficult to understand how that property could be deemed property of the estate--things Mead gave to Ward are particularly unlikely to be things she took from the estate. Because Cobine failed to allege that the property he sought was property of the estate, the court would have erred in granting a judgment akin to a judgment on the pleadings under section 16--1.

The foregoing discussion shows that the court committed error regardless of whether it entered the order under section 2--1402 or section 16--1. The principle in Foutch thus does not give us a basis for deciding the section under which the court proceeded.

---

[1]Certain cases, e.g., In re Estate of Lashmett, 369 Ill. App. 3d 1013, 1020 (2007), use language that suggests that section 16--1 is available whenever a decedent's fiduciary is indebted to the estate. Historically, section 16--1 has been available to recover property held by a person as a fiduciary or obtained by a person acting in a fiduciary capacity. See, e.g., In re Estate of La Rue, 53 Ill. App. 2d 467, 472-73 (1964); In re Estate of Willich, 338 Ill. App. 289, 299 (1949). We urge caution with regard to the broader language. The core purpose of section 16--1 is to recover property that is identifiably that of the estate.

We next turn to the question of whether the order was appealable. We go through the analysis first assuming that the proceeding was one under section 2--1402. We then summarize the parallel analysis, assuming that the probate court entered the order under section 16--1.

We consider the order in its component portions: the order that the sheriff sell Ward's personal property and the order concerning the property at 1112 Elizabeth Avenue. We examine first the portion ordering the sale of personal property and we then turn to the order concerning the real property. We find that we have jurisdiction to review each portion.

The order that the sheriff sell Ward's personal property was a final order appealable under Supreme Court Rule 304(b)(4). Rule 304(b)(4) makes automatically appealable a "final judgment or order entered in a proceeding under section 2--1402 of the Code of Civil Procedure." 210 Ill. 2d R. 304(b)(4). Few cases discuss which orders in supplementary proceedings are final orders. The court in In re Marriage of McElwee, 230 Ill. App. 3d 714, 719 (1992), suggests that a final order in a nonwage garnishment case is one that places the citation petitioner "in a position where she can actually collect the judgment debt out of the subject property." However, the general definition of a final order shows that an order for the sale of nonfungible property should be a final order. A final order is one that "disposes of the rights of the parties either with respect to the entire controversy or some definite and separate portion thereof." Arachnid, Inc. v. Beall, 210 Ill. App. 3d 1096, 1103 (1991). An order of sale finally decides the debtor's right to possess a given piece of property. This conclusion agrees with the rule in foreclosure cases. The last final order--the one automatically immediately appealable--is the one approving the distribution of the sale proceeds. See In re Marriage of Verdung, 126 Ill. 2d 542, 555 (1989); In re Hodges, 350 B.R. 796, 802 nn. 8 & 9 (Bankr. N.D. Ill. 2006). However, the judgment of foreclosure, which permits the property's sale, is

nevertheless a final order, in the sense that a party can appeal it with a finding under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). <u>Verdung</u>, 126 Ill. 2d at 555; <u>Hodges</u>, 350 B.R. at 802 nn. 8 & 9.[2]

The one cause we found for hesitation on this point was the order's continuance of Ward's claim of exemptions to a later date. This continuance initially seemed inconsistent with an unqualified order for the sale of Ward's personal property. As sections 12--1001 and 12--1002 of the Code (735 ILCS 5/12--1001, 12--1002 (West 2006)) show, a debtor applies personal property exemptions to specific objects--any right to apply such exemptions to proceeds of the property's sale is merely derivative of the basic right to exemptions. Thus, to order sale before applying exemptions is to shoot first and ask questions later. Nevertheless, our review of the October 31, 2006, hearing transcript persuades us that all concerned believed that the escrow of the sheriff's sale proceeds was adequate protection of Ward's exemption rights. Thus, the court did not intend the continuance of the consideration of exemptions to be a qualification of the sale order.

The portion of the order concerning the house presents a different problem, but it is an appealable order nonetheless. On its face, the order <u>requires</u> Mead to sell the house: "The real property *** to be sold." Read this way, this portion was final and appealable for the same reason the portion ordering the sale of personal property was final and appealable: it would effectively end Ward's claim that she was entitled to possession. However, at the hearing, the court stated unambiguously that Ward was free to try to block the sale by filing another action. Given that statement, we must understand the order as one declining to block the sale, and not, as first appears,

---

[2]The absence of a Rule 304(a) finding is not an issue here, as Rule 304(b)(4) makes immediately appealable <u>any</u> final order in a proceeding under section 2--1402.

one requiring Mead to proceed with the sale. Read this way, the real substance of the order was to require Mead to escrow the proceeds, retain his title, seek court permission for any sale other than the proposed one, and not further encumber the property. The requirement that Mead retain title would prohibit him from placing the property in trust and thus would prevent him from carrying out the terms of the agreement. Section 2--1402(f)(2) of the Code specifically provides for an injunctive order preventing a person holding property that is the subject of a citation proceeding from transferring that property. 735 ILCS 5/2--1402(f)(2) (West 2006) ("The court may enjoin any person *** from making or allowing any transfer or other disposition of, or interference with, the property of the judgment debtor not exempt from the enforcement of a judgment"); see also In re Fowler, 90 B.R. 375, 376, 378 (Bankr. N.D. Ill. 1988) (noting that an order requiring that a trustee not effect any change in interest in the trust corpus was an injunction under section 2--1402(f)(2)). This portion of the order was thus an injunction and appealable under Supreme Court Rule 307 (188 Ill. 2d R. 307).

Ward had standing to appeal the order under Rule 307. See In re Nitz, 317 Ill. App. 3d 119, 122 (2000) ("A party has standing to appeal where he or she has some real interest in the cause of action or a legal or equitable interest in the subject matter of the controversy"). Ward did not follow the specific procedures set out in Rule 307 for the appeal of an injunction. However, the appeal was timely under Rule 307, and we find no authority to suggest that a failure to specifically invoke Rule 307 is a jurisdictional failure. Therefore, we have jurisdiction to review this portion of the order as well.

We now consider our jurisdiction using the assumption that the proceeding was one under section 16--1. The analysis is essentially the same. Rule 304(b)(1) makes immediately appealable

a "judgment or order entered in the administration of an estate *** which finally determines a right or status of a party." 210 Ill. 2d R. 304(b)(1). The order for sale finally determined Ward's right to her personal possessions. It did not finally determine her rights to 1112 Elizabeth Avenue, as it left open that Ward might seek to block the sale by other means. However, the change in statutory context does not change that portion's injunctive character or its appealability.

Ward contends that the probate court lacked jurisdiction to enter the order. On this point, we would have to present wholly different analyses depending on whether the proceeding was one under section 16--1 of the Act or section 2--1402 of the Code. Ward contends that the court closed the probate case on March 21, 2005, when it entered an order stating that the "file [was] closed subject to annual reports." Even if it did intend by that order to close the case, it reopened it on April 18, 2005 (that is, within 30 days, while it still had jurisdiction to modify its March 21 order), when it entered an order placing the case on inactive status. Thus, the probate case was open at the time of this citation proceeding. If that proceeding was one under section 2--1402, other jurisdictional questions would arise. However, because we remand this matter for the probate court to decide, among other things, the nature of the proceeding, and because the probate court can then resolve those questions if they arise, we need not resolve them here.

As our initial analysis showed, the probate court erred in entering the order, whether under section 2--1402 of the Code or under section 16--1 of the Act. We thus must vacate the order. Beyond that, a full resolution of the matter will require the probate court to decide under which section the proceedings occurred. We will now describe what should happen on remand, depending on the applicable section.

Under section 2--1402, had we not reversed Ward's conviction, Cobine would have had a chance to show that the criminal court had set a time to pay in some separate order and that Ward was in default. Ward, of course, would then have been allowed to assert any objections to service or personal jurisdiction that she has not waived. However, assuming that the reversal stands, there is no longer a restitution order that could be made enforceable, so proceedings under section 2--1402 are now barred.

Under section 16--1 of the Act, Cobine would have the opportunity to amend his pleadings to show that Ward (or Mead) was in possession of property of the estate. The existence of the restitution order is not necessarily essential to Cobine's ability to make such a claim.

For the reasons given, we vacate the order of October 31, 2006, and remand the matter with instructions.

Vacated and remanded with instructions.

HUTCHINSON and CALLUM, JJ., concur.