2021 IL App (1st) 210613

SECOND DIVISION
December 28, 2021

No. 1-21-0613

| | | |
|---|---|---|
| *In re* MARRIAGE OF KRYSTYNA S. ROMAN-KROCZEK, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 2012 D 005889 |
| BOHDAN J. KROCZEK, | ) ) | |
| Respondent-Appellee | ) ) | |
| (Izabela Roman, Intervenor-Appellant). | ) ) | Honorable William Yu, Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs in the judgment and opinion.

OPINION

¶ 1    Intervenor Izabela Roman appeals from an order of the circuit court in which the court ordered her to sell property in Florida to pay the divorcing parties' attorney fees. We conclude that the trial court abused its discretion when it granted the injunction, and accordingly, we reverse.

¶ 2                                    BACKGROUND

¶ 3    On Christmas Day 1985, Bohdan Kroczek and Krystyna Roman-Kroczek got married. Krystyna filed a petition to dissolve the marriage in 2012. Nine years later, the dissolution proceedings remain ongoing, and this case is on appeal on an interlocutory basis for review of an

injunctive order entered below. The injunction at issue is an order requiring plaintiff Izabela Roman, Krystyna's sister, to sell real property in Florida in order to generate funds for the divorcing parties to pay their attorneys in this protracted litigation.

¶ 4    The property in Florida was purchased by Bohdan and Krystyna in 2006. Izabela loaned the parties money for the down payment by taking out a line of credit secured by her own home. Izabela had loaned the parties money in a similar fashion on prior occasions so that they could buy their marital home in Winnetka and a condominium in Poland. For the Florida property, Izabela loaned the parties $350,000. They repaid $200,000 of the loan balance in 2009 when they sold their marital home.

¶ 5    Izabela was granted leave to intervene in these dissolution proceedings. She filed a complaint against Krystyna and Bohdan seeking $214,643.75, which consisted of principal, interest, and expenses she incurred in connection with loaning money to the parties to buy the Florida property. Krystyna answered Izabela's complaint and admitted the allegations. Bohdan filed a motion to dismiss that was denied and then never answered the complaint.

¶ 6    As the case progressed, Bohdan was scheduled to be deposed in 2015. On the date the deposition was scheduled to go forward, Bohdan's counsel appeared in court and advised the court that he had been discharged by Bohdan. Bohdan did not appear in court and did not appear for the deposition. Bohdan later filed a *pro se* appearance in the case indicating that he would proceed in the case representing his own interests. The trial court sanctioned Bohdan for failing to appear at his deposition. The sanction imposed by the trial court was that Bohdan would be prohibited from presenting any evidence, claims, or defenses at trial as a consequence of failing to appear at his deposition.

¶ 7     The trial went forward on October 7, 2015. In regard to Izabela's claim against the parties, Bohdan and Krystyna agreed to execute a lien against the Florida residence in Izabela's favor. Bohdan and Krystyna signed the lien on the second day of trial, on October 8, 2015. The lien was not part of the trial court's subsequent judgment in the dissolution proceedings. The written lien indicates that Izabela is owed $214,643.75 and that it was being granted to Izabela to secure payment of the indebtedness.

¶ 8     After trial, the trial court entered a judgment dissolving the marriage. The trial court found that the property in Florida was worth $1 million subject to a mortgage of $615,918. The trial court found that Izabela was owed $214,643.75 from financing the property and also that she was owed up to $485,400 for money she had loaned Krystyna for living expenses and litigation costs. In its discretion, the trial court awarded the Florida property to Izabela.

¶ 9     Bohdan resisted the judgment entered by the trial court, and he retained new counsel to represent him for posttrial proceedings and an appeal. Izabela attempted to enforce the trial court's judgment and take title to the property in Florida. Krystyna voluntarily signed a special warranty deed that deeded the property to a trustee. Bohdan later also signed the special warranty deed conveying title to a trustee located in Florida. In reliance on the trial court's judgment and on the warranty deed executed by the parties, Izabela paid off the mortgage on the Florida property for $712,871.86. Izabela later sold her home in Winnetka and moved into the property in Florida.

¶ 10     After Bohdan's posttrial motions were resolved, he filed an appeal. We reversed the trial court's judgment, finding that it erred when it prohibited Bohdan from presenting evidence, claims, and defenses at trial for his failure to appear for his deposition. *In re Marriage of Roman-Kroczek*, 2017 IL App (1st) 161359-U, ¶ 41. We explained that the trial court abused its discretion when it fashioned the sanction because the trial court failed to apply progressive sanctions before jumping

to the severe sanction of impairing his ability to try the case on the merits. *Id.* ¶¶ 48-49. In response to a petition for rehearing filed by Izabela, we explained that our reversal of the trial court's order abrogated the ruling that awarded the Florida residence to her, meaning that the issue of the distribution of the Florida property would need to be resolved on remand. *Id.* ¶ 62.

¶ 11    On remand, the case has continued to be vigorously contested, and now at least 10 different circuit court judges have been involved in the case. Extensive motion practice has taken place. On December 14, 2018, Bohdan filed a motion for interim and prospective attorney fees. In a separate but related motion filed the same day, Bohdan requested that the trial court compel the sale of property to pay the parties' expenses and attorney fees. Bohdan requested that the trial court order the sale of two properties in Poland and the property in Florida so that he would have funds for litigation costs and living expenses. Bohdan later noted that, while he was unable to pay his attorney fees, Krystyna's expenses were being paid by her sister Izabela in an aggregate amount of at least $485,000.

¶ 12    The trial court issued a ruling on Bohdan's motion for interim fees on January 29, 2020, which was confirmed by a written order issued two days later. The trial court did not address Bohdan's motion that requested a sale of the three properties. In its ruling on the interim fee issue, the trial court noted that the order awarding the property in Florida to Izabela was reversed on appeal and was ineffectual. The trial court further noted that the Florida property was a marital asset. The trial court ordered Izabela to secure a line of credit on the Florida property for $275,000 and distribute $200,000 of the funds generated by that loan to the parties' attorneys while placing the other $75,000 in escrow.

¶ 13    Izabela took steps to secure financing, but no lenders agreed to loan the money ordered by the court. Bohdan alleged that Izabela was intentionally failing to secure a credit line on the

residence by omitting information to make herself look like a less attractive candidate for a loan. Bohdan argued that Izabela and Krystyna were working together to grind him down in the litigation. Because Izabela failed to secure the financing ordered by the court from the equity in the Florida residence, Bohdan filed a motion on November 5, 2020, requesting that the trial court enter an order that the Poland condominium be sold. Bohdan explained that proceeds from the sale of the parties' property in Poland could be used to fund the ongoing litigation.

¶ 14    The trial court held a hearing on six motions on February 17, 2021, including on the November 5, 2020, motion in which Bohdan requested an order requiring the sale of the condominium in Poland. The trial court listed the motions that it would hear at this particular hearing, and it did not include any mention of the motion that Bohdan had filed more than two years earlier that discussed selling the property in Florida. On April 27, 2021, the trial court denied Bohdan's request for an order requiring the condominium in Poland to be sold. The trial court, however, ruled that "Izabela shall prepare the Florida property for sale." The trial court went on to instruct Izabela about the steps she was required to take to effectuate the sale. The trial court ruled that the proceeds from the sale of the Florida property were to be placed into escrow and that they would be apportioned and distributed by further order of the court. There was no indication before the hearing that a sale of the Florida property was a subject for the hearing.

¶ 15    Izabela filed a notice of appeal from the trial court's order requiring her to sell the Florida property. Bohdan moved to dismiss the appeal, arguing that it was not an injunction and therefore maintaining that there was a lack of appellate jurisdiction. We denied Bohdan's motion to dismiss the appeal on July 21, 2021. The appeal was fully briefed and was submitted for disposition.

¶ 16                                    ANALYSIS

¶ 17     The first issue for us to address is the issue of appellate jurisdiction. To do so, we must examine the nature of the circuit court's order to determine if it was injunctive, such that it vested this court with jurisdiction under the relevant Illinois Supreme Court rules. We already determined that the order was injunctive in nature when we denied Bohdan's motion to dismiss the appeal, but the issue of appellate jurisdiction warrants explanation in this opinion.

¶ 18     The order from which Izabela appeals is the order in which the circuit court compelled her to list the Florida property for sale and take steps to effectuate such a sale. The order requires Izabela to take affirmative actions, and the court's order invokes its equitable powers. Our supreme court has explained that an injunction is a " 'judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.' " *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (quoting Black's Law Dictionary 705 (5th ed. 1979)). In this case, the trial court's order requires Izabela to take certain actions, namely that she list and sell real property in order to comply with the order. See *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1070-71 (2008) (an order compelling a party to sell property is an injunction appealable under Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017)). Izabela was required to "do a particular thing," and the order operated as a mandatory and coercive directive aimed at Izabela's conduct.

¶ 19     Rule 307(a)(1) provides that a party may appeal a trial court's interlocutory order in which the court grants an injunction. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). As the trial court's April 27, 2021, order constitutes an interlocutory order granting an injunction, it is appealable as a matter of right under Rule 307.

¶ 20     Bohdan supports his argument that we lack jurisdiction by referencing cases in which we have been called upon to address temporary relief. For example, in *In re Marriage of Tetzlaff*, 304

Ill. App. 3d 1030 (1999), we addressed an order that required a party in a divorce case to place money into escrow for interim attorney fees. On appeal, we held that an order modifying an interim attorney fee award that required the placement of money into escrow was not an injunctive order that was appealable under Rule 307. *Id.* at 1038. The issue in this case is far different. The injunction here requires a party to do far more than place certain funds in an escrow account. It requires a party to list a piece of real property for sale, sell the property, and then distribute the proceeds of the sale to the court for apportionment. The order is not "temporary" like the order in *Tetzlaff* because it requires specific performance and it requires the alienation of a unique asset instead of just concerning the mere location of a pool of money. The trial court's order in this case cannot be undone—it is a mandatory permanent injunction appealable under Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017).

¶ 21    We next move to the propriety of the trial court's ruling that Izabela sell the residence in Florida in order to pay Bohdan and Krystyna's attorneys on an interim basis. Bohdan contends that, because we reversed the trial court's dissolution judgment, the Florida residence reverted to an asset of the marital estate. His argument continues that, since the Florida residence is common marital property, the trial court was within its statutory discretion to order the sale of the property to pay interim attorney fees (citing 750 ILCS 5/501 (West 2020)). We conclude that the trial court's order is manifestly unreasonable under the circumstances such that it constitutes an abuse of discretion.

¶ 22    This divorce case was filed nine years ago. It went to trial six years ago, and a judgment was rendered. More than four years ago, we remanded the case for a new trial. *In re Marriage of Roman-Kroczek*, 2017 IL App (1st) 161359-U, ¶ 52. That new trial has still not occurred. Now, the case is before us again with a quarrel over *interim* attorney fees when the trial court should be

issuing *final* orders that dispose of this matter. We see no justification for the overreaching injunction, which pertains only to interim fees and fails to move the case forward to a final disposition. The case begs for finality, and we conclude that this interim injunctive order is unreasonable and that it is unsuited to furthering the orderly and just disposition of these proceedings.

¶ 23 The remedy fashioned by the trial court is not sufficiently narrowly tailored to achieve its desired purpose while also accounting for the other relevant considerations at play. See *Robrock v. County of Piatt*, 2012 IL App (4th) 110590, ¶ 66 (" 'An injunction should be reasonable and should only be as broad as is essential to safeguard the rights of the plaintiff.' " (quoting *Tsuetaki v. Novicky*, 158 Ill. App. 3d 505, 514 (1983))). In fact, the injunction entered by the court is a drastic remedy that only serves to delay the proceedings even longer, instead of giving the parties and the attorneys an incentive to bring the case to a close. Bohdan claims the trial court's order simply allows him to access marital property to finance the divorce, but the order has far greater implications, and there was no showing by Bohdan that such an order was necessary here or that there were no less restrictive means for achieving the desired result.

¶ 24 As Bohdan has represented, the divorcing parties own other properties and have assets that can satisfy claims by the attorneys. The record demonstrates that the parties have assets to pay their ultimate obligations, but the case simply needs to be resolved. Thus, there appears to be an adequate remedy at law for the attorneys that is available and will remain available without resort to such extraordinary relief. See *Kaplan v. Kaplan*, 98 Ill. App. 3d 136, 142 (1981). The trial court made no finding to the contrary, such as by finding that selling the Florida residence was the only way the attorneys in the case would ultimately be paid for their services or that the attorneys needed to be paid immediately for a particular reason. There was no showing by Bohdan or his attorneys

that the urgency of the situation necessitated such a profound use of the court's power. See *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 234 (1999). We have previously expressed significant apprehension about requiring a party to sell real estate to pay interim attorney fees (*In re Marriage of Goesel*, 2017 IL App (3d) 150101, ¶ 20), and we reiterate that concern here. The trial court may not order certain marital assets to be sold to directly satisfy an obligation for attorney fees. See *In re Marriage of Walsh*, 109 Ill. App. 3d 171, 176-77 (1982); *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶¶ 92, 116 (explaining that "a court may not order payment of attorney fees directly from the marital estate" and finding that the trial court's order for the husband's 401(k) to be liquidated to pay for interim attorney fees was "in contravention of *Radzik* and section 12-1006 of the Code"). The injunction is too far reaching and ill-defined to survive scrutiny.

¶ 25    There are other issues with the trial court's chosen remedy that are problematic but that we need not discuss at length here. For example, the trustee who holds title to the property at issue in this case is not before the court. The trial court's order does not compel the trustee to do anything, which means that the trial court's order is not fully executing in terms of carrying out its command. There is also the issue of Izabela's recorded lien and her apportionment of equity in the home. The trial court has not addressed Izabela's lien rights or the fact that the vast majority of equity in the home belongs to Izabela personally, not to the marital estate, due to her $700,000 mortgage payoff. The trial court's order takes Izabela's interest from a secured right to an unsecured right, which is a significant deprivation in light of the circumstances presented here. While the marital estate likely has some interest in the Florida property, Izabela has claims to the property that may predominate over the claims of the marital estate.

¶ 26    In addition, Izabela and her husband have been living in the home, paying all taxes and other costs associated with the home, and thereby relieving the parties of all the obligations of

property ownership. Izabela and her husband also have an unlimited homestead exemption, which presents difficult legal questions under Florida law. The trial court did not address the homestead exemption, the fact that its order operates to evict Izabela and her husband from their residence, or the myriad other complications and consequences of its order. The trial court's injunction does not afford adequate weight to protecting the interests of third parties. *In re Marriage of Olbrecht*, 232 Ill. App. 3d 358, 365 (1992). We do not need to delve too deeply into any of those issues because we find that the trial court's injunction is subject to reversal on the basis that it is unreasonable and unnecessary under the circumstances. We simply want to highlight that the trial court's injunction fails to adequately account for its wide-ranging implications and the many competing interests at issue.

¶ 27    It is obvious that an allocation of the Florida residence will need to be addressed in this case at a trial on the merits, just as it was when this case was initially tried. Bohdan repeatedly stresses that all of these questions will need to be addressed at trial. The fact that the parties' competing claims to the property will need to be determined at trial is even more of a reason why the asset should not be disturbed on an interim basis. The focus should be on making a final adjudication of rights to the Florida residence and the parties' other rights, rather than on interim issues that only muddy the waters further.

¶ 28    There are significant evidence and various judicial admissions on file that Izabela is owed money by the parties and by the marital estate. Almost all the actions Izabela took with regard to the Florida residence were taken in reliance on the court's initial judgment awarding the property to her. The Florida residence may possibly be the best and most proper asset to award her following a trial. It makes little sense to order the property to be sold now, to satisfy an interim ruling, only to later determine that Izabela is entitled to the asset. The risk of irreparable harm in this case is

not borne by Bohdan if the injunction is denied; it is borne by Izabela if the injunction stands. Title to the Florida residence is being held in trust, so there is no concern that the asset will be dissipated between now and the time of trial. If necessary, the attorneys can be paid by that asset following a final judgment, if the evidence at trial supports selling the asset to pay the parties' obligations. The fact that the asset will be available until a final judgment is rendered is alone sufficient to defeat the claim that an injunction is necessary. Bohdan has failed to show that there is no other available remedy or that the injunction was necessary to avoid irreparable harm. *Allstate Amusement Co. of Illinois, Inc. v. Pasinato*, 96 Ill. App. 3d 306, 310 (1981).

¶ 29    The trial court's injunction does not preserve the status quo until a final resolution can be had in this matter; it injects more uncertainty and creates even more roadblocks to an attainable judgment that disposes of the case in an orderly manner. We hold that the trial court's order compelling Izabela to sell the Florida residence constitutes an abuse of discretion. We, therefore, reverse the order, and we implore the circuit court to try this matter and enter a judgment disposing of this case without delay.

¶ 30                                      CONCLUSION

¶ 31    Accordingly, we reverse.

¶ 32    Reversed.

---

**No. 1-21-0613**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Roman-Kroczek*, 2021 IL App (1st) 210613 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2012-D-005889; the Hon. William Yu, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael D. Poulos, of Poulos Black P.C., of Evanston, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Olga A. Allen and Brian J. Hurst, of Hurst, Robin & Kay, LLC, of Chicago, for appellee Krystyna S. Roman-Kroczek.<br><br>Marvin J. Leavitt, David C. Adams, and Elizabeth D. Shindler, of Grund & Leavitt, P.C., of Chicago, for other appellee. |

---