# Illinois Official Reports

## Appellate Court

---

**_People v. Hibbler_, 2019 IL App (4th) 160897**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL LASEAN HIBBLER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-16-0897, 4-16-0898 cons. |
| Filed | June 7, 2019 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, Nos. 15-CF-906, 15-CF-1184; the Hon. John Casey Costigan, Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, John M. McCarthy, and Salome Kiwara-Wilson, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Presiding Justice Holder White and Justice Cavanagh concurred in the judgment and opinion. |

**OPINION**

¶ 1 In September 2015, defendant, Terrell Lasean Hibbler, pleaded guilty to threatening a public official (720 ILCS 5/12-9(a) (West 2014)) in exchange for a sentence of 30 months' probation. While on probation, in October 2015, defendant was indicted for armed robbery and resisting a peace officer. *Id.* §§ 18-2(a)(2), 31-1(a-7). The State also filed a petition to revoke his probation.

¶ 2 In August 2016, a jury convicted defendant of armed robbery and resisting a peace officer, and the trial court granted the State's petition to revoke probation. In September 2016, the court sentenced defendant to 30 years in prison for armed robbery, 3 years for resisting a peace officer, and 5 years for threatening a public official and ordered all sentences to run concurrently.

¶ 3 Defendant appeals, arguing (1) the trial court erred at the sentencing hearing by considering defendant's conduct in jail based upon information contained within the presentence investigation report (PSI), (2) the trial court erred by imposing a sentence that constituted a double enhancement, (3) the trial court erred by ordering restitution without stating whether it was to be paid in a lump sum or by installments, (4) trial counsel was ineffective because he failed to challenge the restitution amount in the PSI, and (5) the trial court erred when sentencing defendant after revoking his probation because the sentence was based on his subsequent conduct instead of the original offense for which he had been placed on probation. We agree only with defendant's third argument and remand regarding restitution. We reject all of defendant's other arguments and otherwise affirm the trial court's judgment.

¶ 4 I. BACKGROUND

¶ 5 A. The Charges

¶ 6 In August 2015, defendant was indicted on one count of threatening a public official. *Id.* § 12-9(a). In September 2015, as part of a negotiated plea agreement, defendant pleaded guilty to threatening a public official in exchange for a sentence of 30 months' probation.

¶ 7 In October 2015, defendant was indicted for armed robbery and resisting a peace officer. *Id.* §§ 18-2(a)(2), 31-1(a-7). Later that month, the State filed a petition to revoke his probation, alleging defendant violated the terms of his probation by committing the offenses set forth in the October 2015 indictment.

¶ 8 B. The Trials

¶ 9 In August 2016, the trial court conducted a jury trial on the armed robbery and resisting charges. The court simultaneously conducted a bench trial on the petition to revoke.

¶ 10 Lashkmibhargava Ravi testified he was working at the Blooming Food Mart (Food Mart), a gas station convenience store located in Bloomington, Illinois, on the night of October 3, 2015. Ravi stated that defendant entered the store, pointed a gun at him, and demanded the money in the cash register. Ravi instructed another employee to give defendant the money, which he estimated to be about $3600. Defendant took the money and ran out of the store. Ravi called the police to report the robbery and later identified defendant as the robber after police took him to a location not far from the store where defendant had been arrested.

¶ 11    The State played a surveillance video that depicted the events Ravi described for the jury. The video also showed defendant pointing the gun at Ravi and the other employee and placing the money in his front left pocket.

¶ 12    Bloomington police officer Joseph Rizzi testified he was dispatched to a home, which happened to be near the Food Mart, in response to a reported fight in the residence. Rizzi stated that, as he approached the home, he saw a black male running through the backyard and stopped him to inquire about the fight. Rizzi identified the man as defendant in open court.

¶ 13    Rizzi testified that defendant claimed he saw the fight and was running through the backyard to avoid it. As Rizzi spoke with him, defendant started to back away. Rizzi then noticed cash bulging out of defendant's left jeans pocket, which defendant was trying to stuff into his pocket. Rizzi also noticed defendant's hand was moving toward his waistband generally. Rizzi then heard over his radio about an armed robbery at the nearby Food Mart. (Rizzi explained that Bloomington police officers wear earpieces to listen to information over their radios so that the public cannot hear.) Rizzi stated that defendant was wearing clothing that was identical with the description of the robbery suspect.

¶ 14    Rizzi then attempted to detain defendant, but defendant started to run away. Rizzi grabbed defendant's shirt, and a struggle ensued. After the two tumbled down a hill in the yard, Rizzi attempted to secure defendant's hands, and defendant fought to get away. Another officer on the scene came to Rizzi's aid. The two eventually arrested defendant.

¶ 15    Rizzi testified that he had a cut on his nose, elbow, and both knees as a result of the struggle. Rizzi noted that his bulletproof vest, which was secured with Velcro on either side of his torso, came loose during the fight and was twisted in such a way that it no longer offered him any meaningful protection. (Rizzi also explained that, in part because of incidents such as this one, the Bloomington Police Department now used vests secured by zippers.) Because Rizzi believed defendant was the armed robber, he described himself as "[e]xtremely[ ] [t]errified" during the struggle.

¶ 16    The State presented testimony from multiple other officers who arrived at the scene. Collectively, they recovered $2685 in cash from defendant's jeans pocket and a handgun from the area where the struggle occurred.

¶ 17    Detective Tim Power, who interviewed defendant at the Bloomington police station, testified that defendant said his fingerprints would be on the gun because someone paid him $200 to hold it. The gun had live ammunition in it, but the gun's chamber did not contain a bullet when the police examined it.

¶ 18    The jury found defendant guilty of armed robbery and resisting a peace officer. The trial court found the State had proved its petition to revoke defendant's probation by a preponderance of the evidence.

¶ 19                                    C. The Sentencing Hearing

¶ 20    In September 2016, the trial court conducted a sentencing hearing. The PSI was filed seven days prior to the hearing. The PSI contained a list of rule violations defendant committed while in the county jail and a brief description of the factual circumstances of those violations. The PSI also stated that "the firm *** representing the [Food Mart] Insurer [was] requesting restitution in the amount of $4,359.92," and the City of Bloomington was requesting $280.37

in restitution for Rizzi's medical treatment.

¶ 21                                  1. *Proceedings Relating to the PSI*

¶ 22     At the beginning of the sentencing hearing, the trial court stated it had reviewed the PSI and then asked the State if it had received the PSI as well. The State indicated it had, and the court asked if the State had any changes or amendments. The State responded that it did not.

¶ 23     The trial court then asked the same questions of defense counsel, who indicated he had received the report and asked the court to add one day to the number of days defendant would receive for presentence credit. The State agreed, and the court changed the PSI to include an extra day of presentence credit.

¶ 24     The trial court next moved on to defendant's motion for a new trial. After hearing argument from counsel, the court denied defendant's motion.

¶ 25     The trial court then asked the State if it had anything further before the court proceeded to sentencing. The State asked the court to grant its motion to substitute evidence, replacing the physical cash recovered from defendant with scanned copies of the bills so that the cash could be returned to the victim. The State also asked the court to amend the PSI to reduce the amount of restitution by $2685. The court granted the motion to substitute and also amended the PSI.

¶ 26     Before proceeding to sentencing, the following exchange occurred:

"THE COURT: Anything further before we get to the sentencing hearing, Mr. Rigdon?

MR. RIGDON [(ASSISTANT STATE'S ATTORNEY)]: No, [Y]our Honor.

THE COURT: Mr. Tusek?

MR. TUSEK [(DEFENSE COUNSEL)]: No, [Y]our Honor.

THE COURT: All right. The Court has received and reviewed the PSI. The one amendment that Mr. Tusek has requested has been made. Any objection to the admission of the PSI, Mr. Rigdon?

MR. RIGDON: No, [Y]our Honor.

THE COURT: Mr. Chambers?

MR. CHAMBERS [(MCLEAN COUNTY STATE'S ATTORNEY)]: No, [Y]our Honor.

THE COURT: Mr. Rigdon is going to handle the sentencing?

MR. CHAMBERS: Both of us.

THE COURT: Both of you. Okay. Mr. Tusek, any objection to the—

MR. TUSEK: No. No objection.

THE COURT: The PSI will be shown as admitted. Any evidence in aggravation for the State, Mr. Chambers?"

¶ 27                              2. *Evidence in Aggravation and Mitigation*

¶ 28     The State then presented evidence in aggravation. Pursuant to the State's request, the trial court took judicial notice of the testimony and evidence submitted at trial. Detective Power testified that the police recovered drugs from defendant when they searched him after his arrest. Specifically, Power testified they recovered 10 individual bags of a substance that field-tested positive for cannabis, two digital scales, and two pills of alprazolam.

- 4 -

¶ 29 Defendant presented evidence in mitigation, including a written statement from defendant, a recommendation letter from his aunt, and a copy of a certificate of completion for "Life Skills." In defendant's written statement, he acknowledged that (1) he "broke a lot of Rule Violations [*sic*]," (2) that he knew "breakin[g] the rule wasn't the right thing to do," and (3) "the[re] is no valid reason why I should have committed the violation's [*sic*] of McLean County Jail rule's [*sic*]."

¶ 30                          3. *The State's Arguments*

¶ 31 The State made numerous arguments in support of a lengthy sentence. Relevant to this appeal, the State argued (1) defendant's pointing the gun and fighting the police officer threatened harm and (2) defendant's rule violations in jail were aggravating factors that required a longer sentence.

¶ 32 Regarding the threat of harm, the state's attorney stated as follows:

"When I look at the aggravating factors here, there are quite a few, [Y]our Honor. The way I see it, I believe that sections A1, 2, 3, 7, and 12 all apply. [(730 ILCS 5/5-5-3.2 (West 2014).)] So taking each one of those at a time, A1, to threaten serious harm. Did it cause serious harm or did it threaten serious harm to somebody? I don't think we're making any argument that it caused serious harm to anybody, but did it threaten it? Yes, [Y]our Honor. The State of Illinois has said, you know, with this being a Class X felony with a 15-year enhancement if a firearm is used, has said that if somebody walks into a gas station and flashes a gun—if it's in their belt and they pull their coat to the side like this to show it, that's 21 years there, [Y]our Honor.

This situation went beyond that. As the video shows, he went in there and he was holding the gun to one of the individuals, inches away from his chest; another individual, about a yard away from him. We were a flinch away from this being a homicide, [Y]our Honor.

In addition to that, the other offense of resisting a peace officer. The Court heard testimony from Officer Rizzi. And Officer Rizzi's testimony was earnest. You could tell from his testimony how concerned he was for his safety on that night; that he had a report of an armed robbery, someone matching that description and now reaching for something and not complying with him as he was struggling with him and is knocking his vest off, and him being aware of the possible danger that he was in. Officer Rizzi did everything right that night, and it was still traumatic for him. He was—and it was the defendant who put him in that dangerous situation. It was his choices that put him in that situation. There were three different people that evening who were all in fear of being shot that night."

¶ 33 Concerning defendant's behavior while in custody, the State explained that defendant committed at least nine rule violations. The PSI indicated that defendant got in a fight with another inmate and verbally threatened guards. The State remarked, "It's easy to behave in jail. [Defendant] had a hard time doing that."

¶ 34 Ultimately, the State recommended a sentence of 37 years in prison for armed robbery, 6 years for resisting a peace officer, and 5 years for the original offense of threatening a public official.

¶ 35                                    4. *Defendant's Arguments*

¶ 36        Defense counsel argued that defendant should receive the minimum sentence of 21 years in prison. Counsel emphasized that defendant was just 18 years old at the time of the offense and that the gun did not have a round in the chamber. Accordingly, "the idea that he—there but for the grace of God it would have been a murder is not true." Counsel pointed out that defendant had a traumatic and unstable youth. Defendant never knew his father and was raised by relatives because his mother came in and out of his life. His best friend died in his arms from a gang shooting when defendant was 16. Defendant's relatives sent him to Bloomington to live with his mother because a gang threatened to kill defendant. Upon arriving, his mother promptly kicked him out, and defendant was forced to live with strangers. Counsel emphasized that defendant had rehabilitative potential, as demonstrated by his attendance at "Youth Build," a program that teaches youth trade skills. Counsel also argued that defendant had begun taking responsibility for his actions.

¶ 37                                    5. *The Trial Court's Sentence*

¶ 38        The trial court began its sentencing remarks by mentioning that although it did not find any of the statutory factors in mitigation applied, it did consider "certain nonstatutory factors" as potentially mitigating. These included (1) defendant's young age, (2) his participation in "Youth Build" prior to incarceration and educational programs while in jail, and (3) the difficult circumstances of his childhood.

¶ 39        The trial court then addressed the aggravating factors that it believed applied. Regarding the threat of harm, the court stated as follows:

> "First of all, your conduct caused or—and threatened serious harm; not only to the individuals in the store, where your gun was pulled and pointed at; not only the officer you chose to fight with at the time he was detaining you; but what this Court also believes is society in general, the entire community. When conduct—when somebody goes into a store and pulls a gun, chooses to fight officers, not only are those individuals threatened, but the Court believes society is threatened as well."

¶ 40        The trial court also believed there was a need for deterrence and emphasized that defendant was on probation at the time he committed the armed robbery. The court then considered defendant's criminal history and noted that defendant had several juvenile offenses, some of which included violence.

¶ 41        Regarding defendant's conduct while in jail, the court stated as follows:

> "I have been on the bench now for about 10 years. I was in private practice before that, and I see a number of people who come up on sentencings to where there ha[ve] been problems downstairs[, which is where the county jail is located]. And I have to say that when looking at the PSI, I haven't seen as many problems as I've seen in your case."

The court listed seven different dates on which major and minor rule violations occurred and briefly described the nature of some of the violations, particularly those that included "assault and battery" and "attacking another inmate with a broom." Finally, the court indicated that it found this conduct was a factor in aggravation.

¶ 42        Based on the totality of the circumstances, the trial court sentenced defendant to 30 years in prison for armed robbery, 3 years for resisting a peace officer, and 5 years for threatening a public official and ordered all sentences to run concurrently. The court also ordered defendant

to pay "restitution per the addendum" for the armed robbery. The court's written order stated defendant owed restitution in the amount of $1955.29 but did not state when the amount was due or whether it was to be paid in installments or a lump sum.

¶ 43                                6. *The Motion to Reconsider*

¶ 44    In November 2016, defendant, through counsel, filed a motion to reconsider sentence, arguing, in part, that the trial court failed to take into consideration defendant's willingness to pay restitution as a mitigating factor. The motion did not contain any allegations regarding ineffective assistance, and defendant did not file any *pro se* motions. The trial court denied the motion to reconsider.

¶ 45    This appeal followed.

¶ 46                                II. ANALYSIS

¶ 47    Defendant appeals, arguing (1) the trial court erred at the sentencing hearing by considering defendant's conduct in jail based upon information contained within the PSI, (2) the trial court erred by imposing a sentence that constituted a double enhancement, (3) the trial court erred by ordering restitution without stating whether it was to be paid in a lump sum or by installments, (4) trial counsel was ineffective because he failed to challenge the restitution amount in the PSI, and (5) the trial court erred when sentencing defendant after revoking his probation because the sentence was based on his subsequent conduct instead of the original offense for which he had been placed on probation. We agree only with defendant's third argument and remand regarding restitution. We reject all of defendant's other arguments and otherwise affirm the trial court's judgment.

¶ 48                        A. Defendant's Misconduct in Jail

¶ 49    Defendant first argues the trial court erred by considering his rule violations while in jail "without the benefit of witness testimony." Defendant acknowledges he failed to raise this argument to the trial court but maintains it can be reviewed for plain error. The State responds that this argument was not only forfeited but has been waived by defendant's affirmative acquiescence—specifically, his failure to object to the PSI. We agree with the State.

¶ 50                                1. *The Applicable Law*

¶ 51    "Waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098, 943 N.E.2d 1249, 1256 (2011). "In the course of representing their clients, trial attorneys may (1) make a tactical decision not to object to otherwise objectionable matters, which thereby waives appeal of such matters, or (2) fail to recognize the objectionable nature of the matter at issue, which results in procedural forfeiture." *Id.* The doctrine of plain error permits a reviewing court to consider arguments that a defendant forfeited by failing to raise them to the trial court. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. However, the plain-error doctrine does not apply to affirmative acquiescence. *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 12, 992 N.E.2d 184. "When *** defense counsel affirmatively acquiesces to actions taken by the trial court, a defendant's only challenge may be presented as a claim for ineffective assistance of counsel on collateral attack." *Id.*

¶ 52 Nearly 30 years ago, in *People v. Powell*, 199 Ill. App. 3d 291, 294-95, 556 N.E.2d 896, 898 (1990), this court held that (1) both the defendant and the State are *required* to bring any inaccuracies in—or disagreement with—the PSI to the trial court's attention and (2) the failure to do so results in the waiver of any objection to the trial court's consideration of the contents of the PSI. We further held that "*all* information appearing in a presentence report may be relied upon by the sentencing judge to the extent the judge finds the information probative and reliable." (Emphasis in original.) *Id.* at 294. We also suggested that trial courts, at the start of the sentencing hearing, ask all counsel if they received the PSI and if they found any inaccuracies. *Id.* at 294-95.

¶ 53 In *People v. Willis*, 361 Ill. App. 3d 527, 528, 838 N.E.2d 130, 131 (2005), the defendant was found guilty of aggravated battery against a correctional institution employee. At sentencing, the trial court considered allegations of rules violations contained in the PSI, and neither party objected. *Id.* at 529. On appeal, this court held that the defendant had forfeited any objection to the trial court's reliance on the PSI and that the trial court was entitled to rely on the information in the report because the "defendant failed to object to the disciplinary reports or allege they were unreliable." *Id.* at 531. The court noted that the "defendant's disciplinary record evidenced his repeated inability to follow institutional rules and a disregard for authority," which were relevant to determine his rehabilitative potential. *Id.*

¶ 54                                           2. *This Case*

¶ 55 As in *Willis*, the information in the PSI was highly relevant because it demonstrated defendant's violent behavior and continued disrespect of authority, which are relevant factors for the trial court to consider when sentencing defendant for his armed robbery and resisting a peace officer convictions. Defendant failed to object in the trial court to the information contained in the PSI, and on appeal, defendant does not argue that the information regarding his rule violations while in jail was inaccurate in any way. Instead, defendant appears to be arguing that the trial court made a purely procedural error by not requiring live testimony for the rule violations contained in the PSI.

¶ 56 However, because defendant's argument is contrary to this court's holding in *Powell*, we reject that argument and reaffirm what we wrote in *Powell*. That is, a defendant must raise any and all objections to the PSI to the trial court. See *People v. Williams*, 149 Ill. 2d 467, 493, 599 N.E.2d 913, 925 (1992) ("Any claimed deficiency or inaccuracy within a presentence report must first be brought to the attention of the sentencing court, and a failure to do so results in waiver of the issue on review."); *People v. Matthews*, 362 Ill. App. 3d 953, 967, 842 N.E.2d 150, 161 (2005) ("the failure to object [to a PSI] results in a concession of its accuracy and the waiver of the claims of inaccuracy"); see also *Williams*, 149 Ill. 2d at 495 ("No purpose would be served by giving the parties notice of the presentence reports at least three days prior to the imposition of sentence [citation] if we were to permit them to later raise objections to the presentence reports for the first time on appeal."). We emphatically reaffirm that the trial court may rely on *all* of the information in the unobjected to PSI to the extent it believes it is relevant and reliable. *Powell*, 199 Ill. App. 3d at 294.

¶ 57 Unquestionably, a defendant should have the *opportunity* to challenge the accuracy of the information in the PSI, and defendant received that opportunity here. The PSI must be given to counsel at least three days prior to sentencing so that they have a meaningful opportunity to

review and investigate its contents. 730 ILCS 5/5-3-4(b)(2) (West 2016); *Matthews*, 362 Ill. App. 3d at 967. We note that in this case, the PSI was filed seven days prior to the hearing.

¶ 58 Because defendant stated he had no objection to the PSI's admission, he in essence told the trial court to rely on its contents to the extent the court believed necessary and reliable.

¶ 59 Another way of viewing defense counsel's conduct at the beginning of the sentencing hearing, when the trial court asked counsel if he had any changes or amendments to the PSI and counsel replied that the only change would be to add one more day for presentence credit, is that counsel was essentially stipulating that the court may consider all of the information contained in the PSI. And, as this court wrote in *People v. Daniels*, 2016 IL App (4th) 140131, ¶ 86, 58 N.E.3d 902 (quoting *People v. Calvert*, 326 Ill. App. 3d 414, 419, 760 N.E.2d 1024, 1028 (2001)), " 'Parties who agree to the admission of evidence through a stipulation are estopped from later complaining about that evidence being stipulated into the record.' "

¶ 60 It is well settled that a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error. *People v. Lawrence*, 2018 IL App (1st) 161267, ¶ 52. This well-established maxim applies with even greater force in this case because the trial court followed the procedure set forth in *Powell*. As a result, we will not review defendant's argument under the plain-error doctrine.

¶ 61                                             B. Double Enhancement

¶ 62 Second, defendant argues that his sentence should be vacated because the trial court erred by considering conduct that was inherent in the offense as an aggravating factor, resulting in a "double enhancement." In particular, defendant claims his pointing a gun at persons during the robbery is consistent with any other armed robbery and therefore created no more than the "typical risk of harm." The State responds that defendant's conduct was significantly more than the minimum required to commit the offense and was properly considered an aggravating factor. We agree with the State.

¶ 63                                             1. *The Applicable Law*

¶ 64 The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court has broad discretionary powers when selecting an appropriate sentence." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37, 99 N.E.3d 571. The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence. *Id.*

¶ 65 The Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2014)) sets forth mitigating and aggravating factors that the trial court must consider when determining an appropriate sentence. *People v. Brunner*, 2012 IL App (4th) 100708, ¶¶ 43-45, 976 N.E.2d 27. The defendant bears the burden to affirmatively establish that the sentence was based on an improper factor. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590. The appellate court will not reverse a sentence unless it is evident that the trial court relied upon an improper factor. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49, 38 N.E.3d 98.

Whether the trial court relied upon an improper factor at sentencing is a question of law reviewed *de novo. People v. Arbuckle*, 2016 IL App (3d) 121014-B, ¶ 39, 60 N.E.3d 185.

¶ 66 "A double enhancement occurs when (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence *** or (2) the same factor is used twice to elevate the severity of the offense itself." *Garcia*, 2018 IL App (4th) 170339, ¶ 29. The Illinois Supreme Court recently described double enhancement as follows:

"The prohibition against dual use of an aggravating factor, referred to as 'double enhancement,' is 'based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense.' *People v. Phelps*, 211 Ill. 2d 1, 12[, 809 N.E.2d 1214, 1220] (2004). Thus, when a defendant contends the court improperly considered a statutory aggravating factor that was implicit in the offense, the defendant is asserting that the court imposed a ' "harsher sentence than might otherwise have been imposed" ' had the court not considered the improper statutory factor. *Id.* (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84[, 600 N.E.2d 1189, 1191] (1992))." *People v. Johnson*, 2019 IL 122956, ¶ 38.

¶ 67 A trial court may consider a defendant's conduct to constitute an aggravating factor if that "conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2014). When considering if the defendant "threatened serious harm," the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense. See *People v. Davis*, 252 Ill. App. 3d 812, 814, 624 N.E.2d 396, 398 (1993); *People v. Ellis*, 401 Ill. App. 3d 727, 731, 929 N.E.2d 1245, 1248-49 (2010). A trial court must examine "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant [citations]." (Internal quotation marks omitted.) *People v. Saldivar*, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986). "[T]he commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm." *Id.* at 269. "[T]he severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted*." (Emphases in original.) *Id.* Accordingly, the sentencing court's attention should be "directed at the degree or gravity of the defendant's conduct, *i.e.*, the force employed and the physical manner in which the victim's death was brought about or the nature and circumstances of the offense." *Id.* at 271.

¶ 68                                    2. *This Case*

¶ 69 Here, the trial court did not commit any error when it found defendant's conduct was an aggravating factor based on the threat of harm. As the State aptly observed at sentencing:

"The State of Illinois has said, you know, with this being a Class X felony with a 15-year enhancement if a firearm is used, has said that if somebody walks into a gas station and flashes a gun—if it's in their belt and they pull their coat to the side like this to show it, that's 21 years there, [Y]our Honor.

This situation went beyond that. As the video shows, he went in there and he was holding the gun to one of the individuals, inches away from his chest; another individual, about a yard away from him."

¶ 70    Defendant's pointing a gun directly at Ravi and the other clerk clearly created a threat of harm much greater than the minimal threat necessary to simply commit the bare offense. See *Davis*, 252 Ill. App. 3d at 814 (explaining that armed robbery may be committed by briefly showing a gun and trial court acted properly by considering defendant's jumping over a store counter and pointing gun at a clerk as an aggravating factor). Indeed, Illinois courts have repeatedly held "that a judge, when sentencing a defendant for armed robbery, may consider as an aggravating factor that the defendant's conduct threatened serious harm." *Id.* at 815 (collecting cases). An example of such an aggravating factor would be the armed robber who actually fires his weapon during the offense, and another example would be the armed robber who pulls the trigger but the gun, for whatever reason, does not fire.

¶ 71    Anything and everything beyond the minimum conduct necessary for the defendant to be found to have engaged in criminal behavior is entirely appropriate for a sentencing court to consider. The trial court in this case recognized the additional threat defendant's actions caused, and its doing so was entirely appropriate.

¶ 72                              3. *Additional Grounds*

¶ 73    We conclude the trial court properly considered defendant's subsequent conduct of fighting with a police officer as a threat of harm. At trial, Rizzi testified that he was "[e]xtremely" terrified. Shortly after learning an armed robbery had occurred a short distance away by someone matching defendant's description, Rizzi saw defendant reach for his waistband. Further, Rizzi's bulletproof vest came loose during the struggle, with the result that it was no longer offering him any protection.

¶ 74    The trial court observed as follows:

> "First of all, your conduct caused or—and threatened serious harm; not only to the individuals in the store, where your gun was pulled and pointed at; not only the officer you chose to fight with at the time he was detaining you; but what this Court also believes is society in general, the entire community. When conduct—when somebody goes into a store and pulls a gun, chooses to fight officers, not only are those individuals threatened, but the Court believes society is threatened as well."

From this observation, we can infer that the court was concerned both for the specific individuals involved and also the numerous citizens in the area who could have been harmed had the gun gone off. This apparent concern was entirely reasonable, and the trial court acted properly by considering the totality of defendant's conduct during the offense.

¶ 75                                 4. *Prior Cases*

¶ 76    Defendant relies on two cases for his assertion that his conduct during the robbery was inherent in the offense. For the reasons that follow, we decline to apply those cases.

¶ 77    In *People v. Rhodes*, 141 Ill. App. 3d 362, 490 N.E.2d 169 (1986), the defendant was convicted of armed robbery when he robbed a fast-food restaurant by pointing a "small-caliber automatic pistol at the manager and another employee." The trial court determined the defendant's conduct threatened serious harm, but this court reversed, concluding, "We do not believe the record in the present case evidences other than that the defendant committed a robbery using a dangerous weapon; elements present in every armed robbery [citation]." *Id.* at 364. No further analysis was provided.

¶ 78 In *People v. Flanery*, 229 Ill. App. 3d 497, 498, 594 N.E.2d 401, 404 (1992), the defendant was convicted of armed robbery for placing a gun against the stomach of a gas station clerk and demanding the money in the register. At sentencing, the trial court stated " 'if we turn to the factors in aggravation, certainly the defendant's conduct caused or threatened serious harm. This was indeed, an armed robbery. The jury has found a gun was used.' " *Id.* at 502. The Third District reversed because "the evidence presented showed nothing more than the defendant committed a robbery using a dangerous weapon; an element present in every armed robbery," and noted that the trial court's brief reasoning prevented it from determining how much weight the court gave the factor. *Id.*

¶ 79 Both of these cases have been criticized for their reasoning. *Davis*, 252 Ill. App. 3d at 815; *People v. Burge*, 254 Ill. App. 3d 85, 89-90, 626 N.E.2d 343, 346-47 (1993). As we earlier noted, courts have repeatedly held that the threat of harm is an appropriate factor to consider in armed robbery cases. *Davis*, 252 Ill. App. 3d at 815 (collecting cases); *People v. Shick*, 318 Ill. App. 3d 899, 909, 744 N.E.2d 858, 866-67 (2001). Unlike *Flanery*, the trial court in this case gave a more detailed explanation as to why defendant threatened harm greater than that inherent in every armed robbery—namely, he pointed a gun at the Food Mart workers and shortly thereafter fought with a police officer. These actions are clearly above the baseline conduct of merely displaying a firearm and demanding money. *Davis*, 252 Ill. App. 3d at 814. Accordingly, the trial court did not err by considering the threat of harm in this case when sentencing defendant.

¶ 80                                    C. The Restitution Order

¶ 81 Third, defendant claims the trial court committed reversible error by failing to indicate if the restitution was to be paid in a lump sum or installments. The State asserts defendant waived this argument by failing to object to the PSI. However, because we agree that the trial court was required by statute to include when and how the restitution was to be paid, we remand the case to the trial court for the limited purpose of compliance with the requirements of the Unified Code regarding restitution.

¶ 82 Section 5-5-6(f) of the Unified Code states that the trial court "shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, *** not including periods of incarceration, within which payment of restitution is to be paid in full." 730 ILCS 5/5-5-6(f) (West 2016). "Compliance with this statute is mandatory." *People v. Hamilton*, 198 Ill. App. 3d 108, 116, 555 N.E.2d 785, 789 (1990), *rev'd in part on other grounds sub nom.*, *People v. Williams*, 149 Ill. 2d 467, 599 N.E.2d 913 (1992); see also *People v. White*, 146 Ill. App. 3d 998, 1004, 497 N.E.2d 888, 892 (1986). "If the court does not specify a particular time [for the payment of restitution], the restitution order is fatally incomplete." *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1067, 890 N.E.2d 964, 969 (2008). Courts have also remanded cases when a trial court includes a time to pay but not the manner of payment—that is, by installments or lump sum. *People v. Fontana*, 251 Ill. App. 3d 694, 709, 622 N.E.2d 893, 904 (1993).

¶ 83 In this case, the trial court did not indicate orally on the record or in its written judgment (1) the date by which defendant was to pay restitution or (2) whether defendant was to pay in a lump sum or by installment. We therefore remand the case to the trial court for the limited purpose of compliance with section 5-5-6(f) of the Unified Code.

¶ 84                                D. Ineffective Assistance of Counsel

¶ 85         Defendant's fourth claim of error is that his trial counsel was ineffective for failing to object to the lack of support (either testimony or documentation) for the amount of restitution requested in the PSI. The State responds that defense counsel's argument in the motion to reconsider sentence that the trial court failed to consider defendant's willingness to pay restitution as a mitigating factor, coupled with his failure to object to the PSI, demonstrates a trial strategy. That is, counsel was attempting to get a lower sentence by pointing out to the court that defendant fully accepted the amount of restitution requested.

¶ 86         On appeal, defendant asserts that no reasonable trial strategy exists for failing to hold the State to its burden of proving the proper amount of restitution. We disagree, and, for the reasons that follow, we conclude defense counsel was not ineffective.

¶ 87                                      1. *The Applicable Law*

¶ 88         The sixth amendment guarantees a defendant the right to effective assistance of counsel at all critical stages of a criminal proceeding. *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 26, 85 N.E.3d 568. "To succeed on a claim of ineffective assistance of counsel during sentencing, a defendant must show that [(1)] counsel's performance fell below minimal professional standards and that [(2)] a reasonable probability exists that the defendant's sentence was affected." *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 122, 26 N.E.3d 460. Failure to satisfy either prong negates a claim of ineffective assistance of counsel. *People v. Fellers*, 2016 IL App (4th) 140486, ¶ 23, 77 N.E.3d 994. When a claim of ineffective assistance of counsel was not raised at the trial court, our review is *de novo*. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24, 42 N.E.3d 885.

¶ 89                                            2. *This Case*

¶ 90         Defendant does not argue that the failure to support the amount of restitution in the PSI with corroborating evidence was plain error. And defendant acknowledges that this court has previously held that a trial court is entitled to rely on the amount stated in the PSI in the absence of an objection to its accuracy. *Powell*, 199 Ill. App. 3d at 295; *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 57.

¶ 91         Instead, defendant claims trial counsel's failure to object to the PSI amounted to ineffective assistance because nothing in the PSI supports the amounts requested ($4359.92 for the insurance company and $280.37 for the City of Bloomington) and trial testimony contradicted it (Ravi testified insurance reimbursed the Food Mart about "$3600"). We reject defendant's interpretation of the record.

¶ 92         We earlier noted that defense counsel twice stated he had no objection to the admission of the PSI. Further, counsel asked for and received a change in the amount of presentence credit by one day. As noted by the State, counsel argued a restitution-related point in his motion to reconsider sentence. The record shows that counsel reviewed the PSI and had no objection to it. Without some evidence showing defense counsel acted improperly, we conclude counsel was not ineffective.

¶ 93         Even assuming defense counsel fell below minimal professional standards, defendant's ineffective assistance claim still fails because he cannot demonstrate prejudice. (We note that although the State contends this issue is better addressed on collateral review at which

- 13 -

additional facts can be put forth, defendant urges that "[d]eferring the determination of this issue to collateral proceeding is unwarranted as the record here is sufficient, and the error claimed cannot be the result of sound trial strategy." We therefore address and reject defendant's claims on the merits.) Defendant does not make *any* argument that the amount of restitution here was incorrect, and we are unable to find any such evidence in the record. Defendant similarly does not argue that the State could not have proved up the amounts requested in the PSI. Ravi's trial testimony was clearly an estimate, and Ravi admitted that he only helps out at the Food Mart and does not own it. Thus, his testimony is not necessarily inconsistent with the requested amount of restitution. Because defendant fails to demonstrate he was prejudiced by his trial counsel's performance, we conclude counsel was not ineffective.

¶ 94                     E. Sentencing on the Petition to Revoke Probation

¶ 95     Last, defendant argues that (1) the trial court improperly sentenced him to the maximum sentence upon revocation of probation and (2) the trial court improperly commingled the offenses when making its sentencing decision. The State argues that the trial court properly sentenced defendant based on his original offense and did not commingle the offenses because the trial court imposed three separate sentences. The State contends that the court's referring to defendant's "other conduct" was the two other "offenses defendant was being sentenced for at the same time." We agree with the State.

¶ 96                              1. *The Applicable Law*

¶ 97     The trial court has broad discretion in imposing a sentence and the appellate court will not overturn the trial court's decision as to the appropriate sentence "unless the trial court abused its discretion and the sentence was manifestly disproportionate to the nature of the case." *People v. Thrasher*, 383 Ill. App. 3d 363, 371, 890 N.E.2d 715, 722 (2008). "When a defendant is admitted to probation and that probation is revoked, the trial court may sentence the defendant to any sentence that would have been appropriate for the original offense." *People v. Young*, 138 Ill. App. 3d 130, 134-35, 485 N.E.2d 443, 445 (1985). In *People v. Witte*, 317 Ill. App. 3d 959, 963, 740 N.E.2d 834, 837-38 (2000), this court explained as follows:

> "Upon revocation of probation, trial courts can consider the crime that resulted in revocation of probation and the defendant's conduct during the probationary period only as evidence of the defendant's rehabilitative potential. [Citation.] Thus, such conduct may be considered as an aggravating factor and may lead to a sentence more severe than that which the court would have initially imposed. [Citation.] The new sentence, however, cannot punish the defendant for anything other than the original underlying offense."

¶ 98     In general,

> "a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *Young*, 138 Ill. App. 3d at 142.

Subsequent conduct on probation can be considered by the trial court because "[c]onduct which leads to revocation of probation has been regarded as a 'breach' of the court's trust, or as

otherwise causing the court to lose confidence in the defendant's rehabilitative potential." *Id.* at 140. In determining whether the trial court improperly imposed a sentence, the appellate court reviews the record as a whole, not isolated statements. *People v. Walker*, 2012 IL App (1st) 083655, ¶ 30, 973 N.E.2d 939.

¶ 99                                    2. *This Case*

¶ 100      In September 2015, defendant pleaded guilty to threatening a public official and was sentenced to 30 months' probation. In September 2016, defendant was sentenced for his subsequent offenses of armed robbery and resisting arrest, as well as on his original offense. The trial court sentenced defendant to 30 years in prison for armed robbery and 5 years in prison for threatening a public official, which was the statutory maximum. 720 ILCS 5/12-9(c) (West 2014); 730 ILCS 5/5-4.5-40(a) (West 2014).

¶ 101      The trial court discussed the factors it considered for each offense in the same proceeding and determined appropriate sentences for each offense. The court's method is unsurprising because both the State and defense counsel focused solely on the armed robbery charge. Indeed, the State had to be prompted by the trial court for a recommendation on the other charges, and defense counsel never mentioned the original offense. Additionally, the armed robbery conviction required a minimum of 21 years in prison because of the use of a firearm, far longer than the maximum prison term on the original offense.

¶ 102      The trial court discussed the timeline of defendant's prior offenses, defendant's conduct while in jail, and the factors it considered for sentencing each offense. The trial court's commentary of defendant's conduct while on probation was relevant to the trial court's consideration of defendant's rehabilitative potential to determine appropriate sentences. Specifically, the new criminal behavior defendant engaged in reflects adversely on his rehabilitative potential, which is a factor the trial court may appropriately consider. *Young*, 138 Ill. App. 3d at 135. Accordingly, the trial court's discussion of defendant's background, conduct in the jail, and the conduct that led to the revocation of probation was appropriate.

¶ 103      Based on this record, we conclude that (1) the trial court did not err in considering defendant's conduct while on probation and (2) the five-year sentence was not an abuse of discretion.

¶ 104                                   III. CONCLUSION

¶ 105      For the reasons stated, we remand the case to the trial court for the limited purpose of conducting a hearing to determine when restitution is to be paid and the manner in which it is to be paid. We affirm the trial court's judgment in all other respects.

¶ 106      Affirmed and remanded with directions.