NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200063-U

NO. 4-20-0063

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 21, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| ELIJAH T. GREEN, | ) | No. 19CF154 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defense counsel was not ineffective for failing to introduce in mitigation scientific evidence related to brain development in young adults. The trial court did not abuse its discretion in sentencing defendant to 12 years' imprisonment. Remand is required because the court failed to establish the manner in which defendant must satisfy the restitution obligation.

¶ 2     On August 23, 2019, defendant, Elijah T. Green (born March 30, 1998), pleaded guilty to aggravated robbery (720 ILCS 5/18-1(b)(1) (West 2018)). Following entry of defendant's plea, he was sentenced to 12 years' imprisonment. Defendant appeals, arguing: (1) he received ineffective assistance of counsel during the sentencing hearing, (2) his 12-year prison sentence was excessive because the trial court failed to consider his rehabilitative potential, and (3) the court's restitution order was improperly entered. We affirm and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4        On April 2, 2019, the State charged defendant with robbery (720 ILCS 5/18-1(a) (West 2018)), aggravated robbery (*id.* § 18-1(b)(1)), and two counts of armed robbery (*id.* § 18-2(a)(2)).

¶ 5        On August 23, 2019, defendant pleaded guilty to aggravated robbery. In exchange for defendant's plea, the State agreed to dismiss the remaining charges in the present case and dismiss pending charges in another case. Additionally, the parties agreed defendant would be unsuccessfully discharged from probation in a prior case. During the plea hearing, the State provided the following factual basis. Ernie Sanders, the victim in this case, communicated through the internet with a person he believed to be a female to discuss the purchase of a saxophone. Sanders, who was not from Illinois, arranged to meet the seller in Danville on February 19, 2019, to make the purchase. When Sanders arrived at the agreed-upon location, he was approached by two males, defendant and Jermaine Butler, one of whom appeared to have a firearm, and who took from Sanders the money he had brought to purchase the saxophone. The court ultimately accepted defendant's plea and scheduled a sentencing hearing.

¶ 6        On September 20, 2019, a presentence investigation report (PSI) was filed. According to the PSI, defendant had two prior felony convictions, one in 2017 and the other in 2018, and had a prior misdemeanor conviction. The PSI also reported that Sanders was seeking restitution in the amount of $5373.80. Several documents from the victim were included in the PSI supporting the requested sum.

¶ 7        The trial court conducted defendant's sentencing hearing on November 15, 2019. In aggravation, the State read a victim impact letter written by Sanders. In his letter, Sanders described his negotiations with the individual he believed to be the seller of the saxophone and the precautions he took to ensure the legitimacy of the sale and to ensure his safety when meeting with

the seller, including that he had armed himself with a handgun for self-defense. The letter further described that, when Sanders arrived at the agreed-upon location in Danville, a man who he later identified as defendant approached his car, opened his passenger door, and got in the car while another man simultaneously got into the backseat of his car. The letter continued:

> "They both start[ed] screaming at me telling me it was a robbery and that they were going to shoot me, kill me, blow my brains out, and other threatening language. I sped off and [defendant] grabbed my steering wheel and gear shift and told me to stop. So I slammed on my brakes and both men pitched forward. At this, I tried to escape my car and they had hold of my seat belt and I couldn't get out. They felt my pistol in my coat pocket and we wrestled for the pistol[ ](my only hope for protection). After 20 seconds of wrestling[,] the man in the back seat stuck an automatic pistol in my ribs and said, [']If you don't stop, I'm going to pull this trigger[.'] At that point I quit resisting the armed robbery."

The men instructed Sanders to pull over so they could take the money he had brought to purchase the saxophone, which they eventually did. According to the letter, before the men took Sanders's money, defendant said, "this is Danville, we own Danville, no mother f***er is going to come in here and tell us what to do. This is our town."

¶ 8 The State also presented testimony from Officer Jonathan Haley of the Vermilion County Sheriff's Department. Haley testified that during the course of his investigation into defendant's conduct, he interviewed Sanders and learned that Sanders was 72 years old at the time of the robbery.

¶ 9 In mitigation, defendant presented numerous letters from defendant's family and friends, two of whom also testified in defendant's behalf. The letters generally described

- 3 -

defendant's participation in his church, his academic achievement, and his close family relationship. The letters also contained statements that defendant had gotten "caught up with the wrong crowd" but had "a lot of potential."

¶ 10  Defendant testified on his own behalf, describing his work history and his participation in his church. Defendant also testified that he "ha[d] a substance abuse problem," explaining that he had previously used Xanax, cocaine, and methamphetamine and had used marijuana and ecstasy daily. Additionally, defendant testified that, before his incarceration, he was spending time with a group of friends with whom he "wanted to try to fit in." According to defendant, these individuals had an "influence on [his] decision[ ]making" and made him "try to be somebody [he] wasn't." Defendant continued that he regretted associating with those friends and, in the future, would stay away from them and be a positive role model for others. On cross-examination, defendant acknowledged that none of the people he claimed had been a bad influence on him were involved in the offense for which he was being sentenced.

¶ 11  Following the presentation of evidence, the parties presented argument. In his argument, defense counsel referenced defendant's age and drug addiction, and asserted that defendant's mistakes were the result of the friends with whom he was associating. The State recommended defendant be sentenced to 15 years in prison, and defense counsel recommended defendant be sentenced to 8 years. The trial court ultimately sentenced defendant to 12 years in prison. In sentencing defendant, the court stated:

> "I hope that you are genuinely remorseful for this despicable crime that you
> committed because it is just absolutely inexcusable. You can't blame your friends,
> you can't blame the drugs, those are choices that you made. You're an adult, and
> what you did to this 72 year old man is once again despicable and inexcusable and

I'm not going to tolerate that type of activity in this county which is my county also.

When I look at the factors in mitigation I do not find any that apply to this specific case. And even in considering the cost of incarceration I feel that the egregious nature of your actions outweighs any concerns I would have about the cost of incarceration.

When I look at the factors in aggravation I find that your conduct caused or threatened serious harm. That you have a history of prior delinquency or criminal activity. That the victim was 60 years—over the age of 60 years, and that the sentence is necessary to deter others from committing the same type of crime.

So having regard to the nature and circumstances of the offense, and to the history, character, and condition of the offender, the Court is sentencing you to 12 years in the Illinois Department of Corrections ***. *** I'm ordering restitution payable to Ernie Sanders in the amount of $5,373.80, that will be a five year restitution order."

After sentencing defendant, the court stated:

"I will indicate that I did read carefully the letters that were submitted on your behalf. I know that you have a loving and supportive family and I just feel sorry for them that you have so—so much let them down and disappointed them and I hope that your time in the Illinois Department of Corrections will allow you to think seriously about what you've done not only to yourself and to the victim but to your family."

¶ 12 On November 22, 2019, defendant filed a motion to reconsider his sentence,

claiming, in relevant part, that his sentence was excessive and that the trial court "erred when it found that there were no factors in mitigation." The court denied defendant's motion.

¶ 13          This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15          On appeal, defendant argues: (1) he received ineffective assistance of counsel during the sentencing hearing, (2) his 12-year prison sentence was excessive because the trial court failed to consider his rehabilitative potential, and (3) the court's restitution order was improperly entered.

¶ 16                         A. Ineffective Assistance

¶ 17          Defendant first argues he was denied the effective assistance of counsel because, during the sentencing hearing, defense counsel "made no independent reference as to [defendant']s youthful age." Because defendant did not raise this claim in the trial court, our review is *de novo*. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 46, 112 N.E.3d 657 ("When *** a claim of ineffective assistance of counsel was not raised in the trial court, our review is *de novo*.").

¶ 18          "Effective assistance of counsel refers to competent, not perfect representation." (Internal quotation marks omitted.) *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10, 93 N.E.3d 664. "To succeed on a claim of ineffective assistance of counsel during sentencing a defendant must show that [(1)] counsel's performance fell below minimal professional standards and that [(2)] a reasonable probability exists that the defendant's sentence was affected." (Internal quotation marks omitted.) *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88, 129 N.E.3d 755. "Failure to satisfy either prong negates a claim of ineffective assistance of counsel." *Id.* Here, defendant's claim fails because he has not demonstrated that his counsel's performance fell below minimal professional standards.

¶ 19        To establish deficient performance, a defendant must show that "counsel's performance was objectively unreasonable under prevailing professional norms." (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29, 161 N.E.3d 125. "[G]reat deference is accorded to a trial counsel's strategic decisions regarding the presentation of mitigating evidence." *People v. Morgan*, 187 Ill. 2d 500, 545, 719 N.E.2d 681, 706 (1999). " '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *People v. McGath*, 2017 IL App (4th) 150608, ¶ 38, 83 N.E.3d 671 (quoting *People v. Manning*, 241 Ill. 2d 319, 334, 948 N.E.2d 452, 551 (2011)). Further, " 'a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight.' " *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 20, 80 N.E.3d 72 (quoting *People v. Perry*, 224 Ill. 2d 312, 344, 864 N.E.2d 196, 216 (2007)).

¶ 20        In the present case, defendant does not contend that defense counsel failed to reference defendant's age during the sentencing hearing. Instead, defendant claims defense counsel provided ineffective assistance because he "fail[ed] to explain to the court why [defendant's] age *mattered*." (Emphasis in original.) According to defendant, in addition to evidence of defendant's age, counsel should have presented scientific evidence demonstrating that "a 20-year-old's brain shares developmental traits not only with an adult's but with a juvenile's," a fact defendant claims has "been recognized not only by scientists and social scientists, but by courts of this State, as well as by the United States Supreme Court." As an example, defendant cites *People v. House*, 2019 IL App (1st) 110580-B, ¶ 65, 142 N.E.3d 756, where the First District held that a life sentence

imposed upon a defendant who was 19 years old at the time of the offense violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). In reaching this conclusion, the First District relied, in part, on two scholarly articles indicating that young adults, like juveniles, were "more susceptible to peer pressure, less future-oriented and more volatile in emotionally charged settings" and that the "ongoing development of their brains means they have a high capacity for reform and rehabilitation." (Internal quotation marks omitted.) *Id.* ¶ 55. Defendant claims that, had defense counsel introduced scientific evidence such as that cited by the *House* court, it would have "highlight[ed] the factor that underpinned each of the mitigating factors—peer pressure, substance abuse, and rehabilitative potential—that [counsel] *did* put forward." (Emphasis in original.)

¶ 21        We recognize that the First District's decision in *House*, and other similar cases cited by defendant, hold that evidence related to brain development in young adults and juveniles may be relevant for purposes of establishing whether a *de facto* life sentence violates the Illinois or the federal constitution. However, none of the authority cited by defendant is particularly relevant to the issue here: whether defense counsel was ineffective for failing to cite such evidence in a case where the maximum possible prison term was only 15 years (see 730 ILCS 5/5-4.5-30(a) (West 2018)). Defendant has simply failed to demonstrate that "prevailing professional norms" required defense counsel to present scientific evidence regarding brain development as mitigating evidence in cases like this one. Moreover, we note that defendant does not contend that defense counsel failed to present evidence of his age or of any other relevant mitigating factor during the sentencing hearing. Instead, defendant only argues that defense counsel failed to tie all of the mitigating evidence together by additionally presenting evidence of brain development in young adults. But even if such evidence would have somehow "bolstered" defendant's cause, as he

contends, we emphasize that defendant is only entitled to competent, not perfect representation. *Thomas*, 2017 IL App (4th) 150815, ¶ 10. The record shows that, during the sentencing hearing, counsel demonstrated an awareness of the relevant mitigating factors and adequately presented mitigating evidence. Nothing more was required here. Therefore, because defendant has failed to establish that defense counsel's performance was deficient, his ineffective assistance of counsel claim fails.

¶ 22                                    B. Excessive Sentence

¶ 23          Defendant next argues his sentence to 12 years' imprisonment was excessive because the trial court failed to consider his rehabilitative potential.

¶ 24          The Illinois Constitution provides that, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." (Internal quotation marks omitted.) *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 36, 115 N.E.3d 423. Additionally, the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1 to 5-5-3.2 (West 2018)) sets forth mitigating and aggravating factors the court must consider prior to issuing its sentence. However, the court is not required to recite or assign a specific value to each mitigating and aggravating factor it has considered. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494. Instead, we presume that the court appropriately weighed the mitigating evidence before it, including the defendant's rehabilitative potential, absent some indication in the record to the contrary, apart from the sentence itself. *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 95, 148 N.E.3d 126; *People v. McDonald*, 322 Ill. App. 3d 244, 251, 749 N.E.2d 1066, 1072 (2001).

¶ 25    "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." (Internal quotation marks omitted.) *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19, 143 N.E.3d 794. A sentence that is within the statutory range provided by the legislature is presumed to be proper, and the trial court's sentence will not be disturbed on appeal absent an abuse of discretion. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 104, 126 N.E.3d 703. The sentencing court abuses its discretion where the sentence is "greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.* In reviewing a defendant's sentence, a court of review "must not substitute its judgment for that of the trial court merely because it would have weighed [the] factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213, 940 N.E.2d 1062, 1066 (2010). Rather, the weight to be given to each mitigating and aggravating factor is "left to the sound discretion of the trial court." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104.

¶ 26    Here, defendant was convicted of aggravated robbery, a Class 1 felony (see 720 ILCS 5/18-1(c) (West 2018)), and was therefore eligible to receive a prison sentence of between 4 and 15 years (see 730 ILCS 5/5-4.5-30(a) (West 2018)). Because defendant's 12-year sentence was within the applicable sentencing range, we presume it was proper. Nonetheless, defendant claims the court abused its discretion in sentencing him because it "made no consideration of [his] rehabilitative promise." Specifically, defendant contends the court: (1) failed to consider his youth, that his conduct was the result of peer pressure, and that he had a history of substance abuse, (2) erred in considering Sanders's victim impact statement, and (3) improperly weighed his relationship with his family as an aggravating factor.

¶ 27    In arguing that the trial court failed to consider his youth, that his conduct was the result of peer pressure, and that he had a history of substance abuse, defendant points to the

following statement by the court:

> "You can't blame your friends, you can't blame the drugs, those are choices you made. You're an adult, and what you did to this 72-year old man is once again despicable and inexcusable and I'm not going to tolerate that type of activity in this county which is my county also.
>
> When I look at the factors in mitigation I do not find any that apply to this specific case. And even in considering the cost of incarceration I feel that the egregious nature of your actions outweighs any concerns I would have about the cost of incarceration."

We disagree with defendant that the court's statement indicates that it failed to consider mitigating evidence. As evidenced by the above quotation, the court considered defendant's age, his claim that he committed the present offense as a result of peer pressure, and his history of substance abuse but concluded that, in light of the egregiousness of defendant's conduct, such mitigating evidence could not excuse defendant's conduct or warrant a more lenient sentence. In other words, although the court found the factors in mitigation to exist, it determined, based on defendant's conduct, it would not apply them here to reduce the length of his prison sentence. Such was the court's prerogative. We further note that "a court is not required to give the defendant's rehabilitative potential more weight than the seriousness of the offense." *People v. Anderson*, 325 Ill. App. 3d 624, 637, 759 N.E.2d 83, 95 (2001). Moreover, as we recently reiterated, a sentencing court is not required to view a history of substance abuse as a mitigating factor and, instead, may properly conclude that defendant's drug addiction "lessened his rehabilitative potential, increased the seriousness of the offense, increased the need to protect society, and increased the need for deterrence." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 108. Finally, as the State demonstrated during

cross-examination, defendant's conduct was not the result of peer pressure. On cross-examination, defendant specifically identified three individuals who he "wanted to try to fit in [with]" and who had an "influence on [his] decision[ ]making about what [he] [was] doing in [his] life," but none of those individuals was involved in the present offense.

¶ 28 Defendant also argues the trial court erred in considering Sanders's victim impact statement. However, defendant did not object to the admission of the victim impact statement during the sentencing hearing, nor did he object to the court's consideration of the statement in his postsentencing motion. Therefore, defendant has forfeited review of this issue on appeal. See *Pina*, 2019 IL App (4th) 170614, ¶ 29.

¶ 29 Finally, defendant argues the trial court improperly weighed his relationship with his family as an aggravating factor. In support, defendant points to the following statement by the court:

> "I will indicate that I did read carefully the letters that were submitted on your behalf. I know that you have a loving and supportive family and I just feel sorry for them that you have so[,] so much let them down and disappointed them and I hope that your time in the Illinois Department of Corrections will allow you to think seriously about what you've done not only to yourself and to the victim but to your family."

Defendant argues this error "undercut[ ] the reality of rehabilitation: if a defendant's family *** is ready to help him adjust to life after incarceration, that should weigh in favor of beginning the rehabilitation process sooner, not imposing a longer sentence." Contrary to defendant's claim, nothing in the record suggests the court used defendant's relationship with his family to impose a more lengthy prison sentence. Rather, the statement is best understood as an admonition to

defendant to reflect on his conduct for the sake of his loved ones. Additionally, we note the court's statement was only made after the court issued defendant's sentence.

¶ 30                                  C. The Restitution Order

¶ 31        Defendant's final argument on appeal is that the restitution order was improperly entered. The State concedes the error.

¶ 32        The Unified Code (730 ILCS 5/5-5-6 (West 2018)) provides that, "[a]s a component of the sentence, a trial court may order a defendant to pay restitution for an economic loss caused by his criminal conduct." *People v. Birge*, 2021 IL 125644, ¶ 47 (citing 730 ILCS 5/5-5-6(a) (West 2014)). Section 5-5-6(f) of the Unified Code states that, "[t]aking into consideration the ability of the defendant to pay, *** the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, *** within which payment of restitution is to be paid in full." 730 ILCS 5/5-5-6(f) (West 2018). Compliance with these statutory requirements is mandatory. *Hibbler*, 2019 IL App (4th) 160897, ¶ 82. "If the court does not specify a particular time [for the payment of restitution], the restitution order is fatally incomplete." (Internal quotation marks omitted.) *Id.*

¶ 33        Here, the trial court indicated in its oral pronouncement that it was entering a "five year restitution order." However, the court did not indicate whether defendant was to pay restitution in a single payment or in installments. Therefore, we agree with defendant that this cause must be remanded for the trial court to additionally establish whether restitution shall be paid in a single payment or in installments, as required by the Unified Code. See, *e.g.*, *People v. Fontana*, 251 Ill. App. 3d 694, 709, 622 N.E.2d 893, 904 (1993).

                                    III. CONCLUSION

¶ 34        For the reasons stated, the trial court's judgment is affirmed, and the cause is

remanded.

¶ 35          Affirmed and remanded.